SEYFARTH SHAW LLP
Jon Meer (SBN 144389)
E-mail: jmeer@seyfarth.com
Bethany A. Pelliconi (SBN 182920)
E-mail: bpelliconi@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendant PACTIV LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK WILSON, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PACTIV LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.  5:20-cv-1691<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT BY DEFENDANT PACTIV LLC**<br><br>*[Filed Concurrently With Declaration Of Justin D. Bowlin]*<br><br>(San Bernardino Superior Court, Case No. CIV DS 2012450)<br><br>Complaint Filed:   May 29, 2020<br>Trial Date:          None Set |

DEFENDANT'S NOTICE OF REMOVAL

65354991v.1

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant PACTIV LLC ("Defendant" or "Pactiv") hereby removes the above-captioned action from the California Superior Court, County of San Bernardino to the United States District Court for the Central District of California. This Court has original federal jurisdiction over this action pursuant section 1332(d)(2) (the Class Action Fairness Act of 2005) ("CAFA"), and removal jurisdiction under 28 U.S.C. Sections 1332(c), 1332(d)(2), 1441(a), 1446 and 1453 and federal question jurisdiction under 28 U.S.C. Section 1331. Removal is proper for the following reasons:

## I.    BACKGROUND

1.    On **May 29, 2020**, Plaintiff MARK WILSON ("Plaintiff") filed an unverified Class Action Complaint in the Superior Court of the State of California, County of San Bernardino, entitled "MARK WILSON, individually, and on behalf of other members of the general public similarly situated, Plaintiff, vs. PACTIV LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive, Defendants" designated Case No. CIV DS 2012450.   (*See* Declaration of Bethany A. Pelliconi ("Pelliconi Decl.") ¶ 3).

2.    On **July 23, 2020**, Plaintiff served the Summons, Complaint, Civil Cover Sheet, Certificate of Assignment and Initial Case Management Order on Defendant's registered agent for service of process. (Pelliconi Decl., ¶ 4 and Exhibit A.)

3.    Exhibit A constitutes all of the pleadings served on Defendant, or retrieved from the San Bernardino County Superior Court records prior to filing of this Notice of Removal. (Pelliconi Decl., ¶ 5).

## II.    TIMELINESS OF REMOVAL

4.    The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting

1
DEFENDANT'S NOTICE OF REMOVAL

forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

5. The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law."). Defendant's 30-day time limit to remove is triggered by Plaintiff's service of the Summons and the Complaint on July 23, 2020. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

6. This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint by personal service on Defendant's registered agent for service of process, on July 23, 2020. 28 U.S.C. § 1446(b); Cal. Civ. Proc. Code § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery.").

7. Plaintiff's Complaint asserts eleven causes of action for: (1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 (Unpaid Minimum Wages); (3) Violation of California Labor Code §§ 226.7, 512(a), 516, and 1198 (Failure to Provide Meal Periods); (4) Violation of California Labor Code §§ 226.7, 516, and 1198 (Failure to Authorize and Permit Rest Periods); (5) Violation of California Labor Code §§ 226(a), 1174(d), and 1198 (Non-Compliant Wage Statements and Failure to Maintain Payroll Records); (6) Violation of California Labor Code § 227.3 (Failure to Pay Vested

Vacation Time and Paid Time Off Upon Termination); (7) Violation of California Labor Code §§ 201 and 202 (Wages Not Timely Paid Upon Termination); (8) Violation of California Labor Code § 204 (Failure to Timely Pay Wages During Employment); (9) Violation of California Labor Code § 2802 (Unreimbursed Business Expenses); (10) Violation of California Business & Professions Code §§ 17200, et seq. (Unlawful Business Practices); and (11) Violation of California Business & Professions Code §§ 17200, et seq. (Unfair Business Practices).

8.   The Complaint seeks to certify the following class and subclass:

"All persons who worked for Defendants as non-exempt, hourly paid employees in California, within four years prior to the filing of the initial complaint until the date of trial ("Class")."

"All persons who worked for Defendants as non-exempt, hourly paid employees in California and who received at least one wage statement within one (1) year prior to the filing of the initial complaint until the date of trial ("Subclass")."

(Ex. A, Complaint, ¶¶ 33-34.)

9.   Accordingly, for purposes of the calculations in this Notice of Removal, the "relevant time period" starting "four years preceding the filing of this Complaint" is from May 28, 2016 until the present.

## III.   CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL

10.   This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. Section 1332(d)(2).  As set forth below, this action is properly removable, pursuant to 28 U.S.C. Section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the action is a class action in which at least one class member is a citizen of a state different from that of a defendant.  28 U.S.C. §§ 1332(d)(2) & (d)(6).  Furthermore, the number of putative class members is greater than 100.  28 U.S.C. § 1332(d)(5)(B); Declaration of Justin D. Bowlin ("Bowlin Decl."), ¶ 7.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.    Plaintiff and Defendant Are Minimally Diverse

11.    CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a state different from any named defendant. *See* 28 U.S.C. § 1332(d)(2)(A). Here, such minimal diversity exists among the parties. Plaintiff is a citizen of a state (California) that is different from the states of citizenship of Defendant (Delaware and Illinois).

#### 1.    Plaintiff Is A Citizen of California

12.    For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state"). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

13.    The Complaint alleges that "Plaintiff Mark Wilson is a resident of San Bernardino, in San Bernardino County, California. Defendants employed Plaintiff as an hourly paid, non-exempt Lift Truck Operator from approximately August 2017 to March 2020. Plaintiff worked for Defendants at their location in San Bernardino, California." (Ex. A, Complaint ¶ 4). Plaintiff was employed by Defendant in California, maintained a residence in California throughout his employment, and has not at any time notified Defendant of any other address. (Bowlin Decl., ¶ 6.) Plaintiff's domicile, and intent to

DEFENDANT'S NOTICE OF REMOVAL

remain domiciled in California is further evident from the fact that he brought this lawsuit in the San Bernardino Superior Court.

### 2. Defendant Pactiv Is A Citizen Of Delaware And Illinois, And Is Not A Citizen Of California

14.     Defendant Pactiv is, and was at the time of the filing of this action, a citizen of a state other than California within the meaning of 28 U.S.C. Section 1332(c)(1).  For purposes of diversity jurisdiction, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

15.     The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend,* 559 U.S. 77, 80-81, 92-93 (2010). Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis. *Id.* ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities").

16.     Defendant Pactiv is, and ever since this action was commenced has been, incorporated under the laws of the Delaware.  (Bowlin Decl. ¶ 4.).  Thus, for purposes of diversity jurisdiction, Defendant Pactiv is a citizen of Delaware.

17.     Further, Defendant Pactiv's principal place of businesses is, and has been at all times since this action commenced, located in the State of Illinois.  (Bowlin Decl., ¶ 5.)  Thus, under the "nerve center" test, Illinois is the state of Defendant Pactiv's principal place of business.

18.     Therefore, for purposes of diversity of citizenship, Defendant Pactiv is and has been at all times since this action commenced, a citizen of Delaware and Illinois.  28 U.S.C. § 1332(c)(1).  Because Plaintiff is a citizen of California and Defendant Pactiv is a citizen of Delaware and Illinois, minimal diversity exists for purposes of CAFA.

65354991v.1

19.     **Doe Defendants.** Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristoe v. Reynolds Metals Co*., 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant").  Indeed, the presence of "DOE" defendants in this case has no bearing on diversity of citizenship for removal.  Thus, the existence of "DOES 1 through 100" in the Complaint does not deprive this Court of jurisdiction.  *Abrego v. Dow Chemical Co*., 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

## B.     <u>The Amount in Controversy Exceeds the Statutory Minimum</u>

20.     CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).  In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.  The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  *Id*. at 42-43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provision should be

DEFENDANT'S NOTICE OF REMOVAL

read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

21.    **Preponderance Of The Evidence Standard.**  Plaintiff's Complaint does not allege the amount in controversy for the class he purports to represent.  Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a **preponderance of the evidence** that the amount in controversy exceeds the statutory minimum.  In *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard.  *Accord Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

22.    In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the *preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)."  Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant").  The defendant must show that it is "more likely than not" that the jurisdictional threshold is met.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a

preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional minimum]. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

23.     To satisfy this standard, the "Defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases.  First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'") (emphasis added).

24.     The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages."  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

25.     It is well-settled that "the court must accept as true plaintiff's allegations as pled in the Complaint and assume that plaintiff will prove liability and recover the damages alleged."  *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

26.     As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."  *Valdez v. Allstate Ins. Co.*,

8

DEFENDANT'S NOTICE OF REMOVAL

372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

27.    If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.  She did not.

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform … policies were applied to **all** putative class members reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the

9

65354991v.1

Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

28.    Numerous other district courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate.  *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "[the defendant] engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio, LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff

DEFENDANT'S NOTICE OF REMOVAL

and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

29.    The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000. Plaintiff's Complaint seeks to certify, and seeks relief on behalf of, "All persons who worked for Defendants as non-exempt, hourly paid employees in California, within four years prior to the filing of the initial complaint until the date of trial ("Class"). (Ex. A, Complaint ¶ 33).

30.    During the relevant time period identified in the Complaint, Defendants employed 1,418 non-exempt hourly employees in California, and these employees worked a total of 199,414 workweeks. (Bowlin Decl. ¶ 7).

31.    During the relevant period, the average hourly rate of pay for the putative class members was $19.75. (Bowlin Decl., ¶ 7.)

32.    Plaintiff seeks to recover, on behalf of himself and the alleged class, unpaid wages and penalties for Defendant's alleged failure to pay minimum wage and overtime wages, failure to provide meal and rest breaks, failure to timely pay wages during employment, failure to pay all wages due upon termination of employment, failure to pay vested vacation time upon termination, failure to reimburse business expenses, failure to provide accurate and complete itemized wage statements, and unfair business practices.

65354991v.1

(Ex. A, Complaint.)  Plaintiff also seeks attorneys' fees and costs.  (Ex. A, Complaint, Prayer For Relief, ¶¶ 8, 13, 21, 28, 34, 39, 45, 51, 57, 62, 67.)

33.     As set forth below, the amount in controversy implicated by the class-wide allegations easily exceeds $5,000,000.00. All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.

### 1.     Meal and Rest Break Claims

34.     Plaintiff seeks recovery on his behalf and on behalf of the potential class based on his allegation that "Defendants engaged in a **company-wide practice and/or policy of not paying all meal period premiums owed when compliant meal periods were not provided**. Because of Defendants' practices and/or policies, Plaintiff and class members have not received premium pay for all missed, late, and interrupted meal periods." (Exh. A, Complaint, ¶ 61.) (emphasis added.)  Plaintiff also alleges that "**Defendants did not schedule second meal periods and had no policy for permitting Plaintiff and class members to take second 30-minute meal periods** on days that they worked in excess of ten (10) hours in one day . . ."  (Exh. A, Complaint, ¶ 60.) (emphasis added.)

35.     Plaintiff also alleges that "Defendants **maintained a company-wide on-premises rest period policy, which mandated that Plaintiff and class members remain on Defendant's premises during their rest periods** . . . Thus, Defendants effectively maintained control over Plaintiff and class members during rest periods.  As a result of Defendants' practices and policies, Plaintiff and class members worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted 10-minute rest periods to which they were entitled." (Exh. A, Complaint, ¶¶ 68-69.) (emphasis added.)  Plaintiff further alleges that "Defendants regularly failed to authorize and permit Plaintiff and class members to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof.

Defendants had a **company-wide policy and/or practice of failing to authorize Plaintiff and class members to take third rest periods** when they worked in excess of ten (10) hours in one day." (Exh. A, Complaint, ¶ 67.) (emphasis added.)

36.    California Labor Code Section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ." Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ." California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods or rest periods. Case law makes clear that an employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

37.    The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years. *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."). However, Plaintiff alleges a claim for meal and rest break premiums pay as part of his unfair competition claim under Business and Professions Code section 17200, *et seq*. (Ex. A, Complaint, ¶¶ 119-121.) Although Defendants contend that meal and rest break premium pay cannot be recovered under Business and Professions Code section 17200 (*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010)), according to the allegations in Plaintiff's Complaint, the four-year statute of limitations applies for purposes of removal. Cal. Bus. & Prof. Code § 17208. Thus, for determining the amount in controversy, the four-year statute of limitations applies.

13
DEFENDANT'S NOTICE OF REMOVAL

38.     The Complaint is silent as to the amount of alleged meal periods or rest periods Plaintiff claims to have been denied, thereby precluding precise estimates of the amount in controversy.  Because Plaintiff alleges that Defendants had a "company-wide practice and/or policy" of meal and rest period violations, (Exh. A, Complaint, ¶¶ 61, 68, 70),  the Complaint contemplates a 100% violation rate for the meal period and rest period claims.  Accordingly, a 100% violation rate can properly be assumed for purposes of calculating the amount in controversy of Plaintiff's meal and rest period claims.  *See Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc.*, 482 U.S. at 392 (finding a 100 percent violation rate appropriate when "plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%").

39.     While Defendants are entitled to assume a 100 percent violation rate (*i.e.*, five missed meal periods and five missed rest periods per workweek) based on the allegations in the Complaint, Defendants will conservatively assume that putative class members were not provided **just one** meal period **and one** rest period each workweek.[1] Where Plaintiff has alleged a policy and practice of meal and rest period violations, it is reasonable to assume that there was at least one meal and rest period violation each week for every employee.  Indeed, district courts have consistently upheld even higher assumptions of meal period and rest period violations as plausible for purposes of determining the amount in controversy.  *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period and three rest break violations per week reasonable where Plaintiff alleged a "a policy and practice" of meal and rest break violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) ("Defendant conservatively assumed the putative class members were not provided … three of ten rest periods they were entitled to receive each work week, even though

---

[1] Plaintiff cannot allege that "[t]here are common questions of law and fact as to class members that predominate over questions affecting only individual members" (Ex. A, Complaint, ¶ 37), without also implicitly alleging that each putative class member suffered at least one meal period and one rest period violation per week based on an alleged "company-wide practice and/or policy" of meal and rest period violations.  (Exh. A, Complaint, ¶¶ 61, 68.)

DEFENDANT'S NOTICE OF REMOVAL

65354991v.1

assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint. The Court therefore we (*sic*) finds Defendant's assumed violation rates reasonable"); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30–minute lunch break periods.  Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed fewer than five legally required meal breaks per week. Thus, the Court finds that 'Plaintiff's own complaint alleges universal violations of meal ... period laws' such that Defendant's 'use of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding an estimate of five missed rest periods a week reasonable where plaintiff alleged that defendant maintained "policies, practices and procedures that caused the purported violations. . ."); *Lopez v. Aerotek, Inc.*,  2015 WL 2342558, at *2 (C.D. Cal. May 14, 2015) (finding defendant's estimate of five meal period and five rest period violations was reasonable); *Coleman*, 730 F. Supp. 2d at 1150  ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate," i.e., 5 missed meal periods and five missed rest breaks per week).  *Accord Arias*, 936 F.3d at 926 (holding that "Marriott's assumptions are plausible" where it assumed "one missed rest break" as the "lowest assumed violation rate").

40.    As stated above, during the relevant time period identified in the Complaint, Defendants employed 1,418 non-exempt employees in California; these employees worked 199,414 work weeks and earned an average hourly wage of $19.75.  (Bowlin Decl. ¶ 7).

41.    Although Defendant denies that Plaintiff (or any potential class member) is entitled to any meal or rest period premium payments, assuming **just one meal and rest period violation per week** for each putative class member, the amount in controversy

15
DEFENDANT'S NOTICE OF REMOVAL

would be approximately **$7,876,853** [$19.75/hour x 2 hours x 199,414 workweeks ]. Thus, the $5 million amount in controversy is established in this matter based solely on Plaintiff's meal and rest period claims, based on the most conservative estimate of potential liability for those claims.

### 2.   Unpaid Wages

42.    Plaintiff alleges that "Defendants had, and continue to have, a **company-wide policy and/or practice of discouraging and impeding Plaintiff and class members from recording hours worked that were outside of their scheduled shifts, resulting in a failure to account for all of the time Plaintiff and class members worked**.  For example, Defendants pressured Plaintiff to clock in up to seven (7) minutes before the start of his scheduled shift and begin working, but, on information and belief, Defendants timekeeping system adjusted his clock-in time to his scheduled start time . . . Because Plaintiff and class members worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay."  (Exh. A, Complaint, at ¶¶ 46-47.) (emphasis added.)

43.    As to these claims, Plaintiff seeks to certify a class covering the last four years. (Exh. A, Complaint, at ¶¶ 33, 46.)  During that period of time, Defendant employed 1,418 non-exempt employees in California; these employees worked 199,414 work weeks during that time period.  (Bowlin Decl., ¶ 7).

44.    Activities that take only ten minutes or less outside an employee's scheduled working hours are generally considered *de minimis* outside of California, and thus not compensable.  *See*, *e.g.*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946); *Lindow v. United States*, 738 F.2d 1057, 1062, 1063 (9th Cir. 1984) ("[i]t is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved"; "most courts have found daily periods of 10 minutes *de minimis* even though otherwise compensable").  And, although the California Supreme Court recently held that the *de minimis* doctrine may not be available in defending against unpaid wage claims under the California Labor Code in many contexts,

DEFENDANT'S NOTICE OF REMOVAL

it addressed specifically instances involving regular or routine minutes of off-the-clock work, and indicated that the defense may still be available in the context of "minute or irregular" instances of compensable time. *Troester v. Starbucks Corp.*, 5 Cal. 5th 829, 835 (2018). Thus, in order to plead a claim for unpaid minimum wages or overtime wages, Plaintiff's allegations must necessarily involve time that is more than "*de minimis*" under California law.

45. Although Defendants deny Plaintiff's allegations or that he or the potential class are entitled to any relief, it is reasonable to assume, based on Plaintiff's allegations and the applicability of the *de minimis* rule, that employees worked, at minimum, 30 minutes of unpaid overtime per week for the alleged off the clock activities, including being "pressured . . . to clock in up to seven (7) minutes before the start of [their] scheduled shift[s] . . . [for which they] received no compensation . . . " (Complaint, Exh. A at ¶ 46.)

46. As the Ninth Circuit and numerous district courts have held, an estimate of at least 30 minutes per class member per week is appropriate in light of Plaintiff's allegation that Defendants had a "pattern and practice" of wage abuse, including overtime violations. *See, e.g.*, *Arias*, 936 F.3d at 927 (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of unpaid overtime per week"); *Wheatley*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (finding an estimate of one hour per class member per week appropriate where Plaintiff alleged a "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is owed one hour of overtime compensation per week where the complaint alleged overtime violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of one

DEFENDANT'S NOTICE OF REMOVAL

hour of overtime per week where the plaintiffs' asserted the defendant "sometimes" failed to pay overtime); *Ray v. Wells Fargo Bank*, N.A., 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable the defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work).

47.     Conservatively assuming that the putative class members worked 30 minutes per work week off the clock, and assuming that time did not result in any overtime, the potential unpaid wages total **$1,969,213** (199,414 work weeks x $19.75 average hourly rate x 50%).

### 3.     Waiting Time Penalties

48.     Plaintiff also alleges Defendants violated Labor Code §§ 201 and 202 by failing to timely provide payment upon termination. Specifically, Plaintiff alleges that "Defendants willfully failed to pay Plaintiff and class members who are no longer employed by Defendants the earned and unpaid wages . . . including but not limited to, overtime wages, minimum wages, meal and rest period premium wages, and/or all vested vacation wages, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ . . . Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203." (Exh. A, Complaint, ¶¶ 87-88.)

49.     Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

50.     The statute of limitations period for California Labor Code § 203 penalties extends back three years from the date of filing of the Complaint. *See Pineda v. Bank of*

DEFENDANT'S NOTICE OF REMOVAL
65354991v.1

*Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

51.    It is also reasonable to assume that each employee waited over 30 days for payment of any allegedly unpaid wages. *See Tajonar v. Echosphere*, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

52.    In addition, because Plaintiff does not allege that some (or any) class members worked part time, it is reasonable to assume that each employee worked eight hour shifts. *See Wheatley*, 2019 WL 688209, at *6 ("it is reasonable for Defendant to assume eight-hour shifts"). However, Defendant's conservative, "plausible" calculations of the amount in controversy for Plaintiff's claim for waiting time penalties accounts for both part-time and full-time employees.

53.    During the 3 year limitations period for this claim, there were 472 potential class members employed by Defendants in California whose employment ended. (Bowlin Decl. at ¶ 8).

54.    Assuming that these 472 employees are owed only 6 hours of pay per day for the maximum penalty of 30 days' wages, the alleged amount in controversy for the claim for waiting time penalties would be approximately **$1,677,960** [($19.75 x 6 hours x 30 days) x 472].

4.      **Approximate Aggregate Amount In Controversy (Not Including Claims For Inaccurate Wage Statements, Violation of Cal. Labor Code § 204, Unpaid Vacation Pay, Or Unreimbursed Expenses**

55.     Although Defendants deny Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the alleged class, exclusive of attorneys' fees, is approximately **$11,524,026**, calculated as follows (without including any estimated liability for Plaintiff's claim for inaccurate wage statements, violation of Cal. Labor Code § 204, unpaid vacation pay, or unreimbursed expenses):

| | | |
|---|---|---|
| · | **$7,876,853** | Meal/Rest Period Claim (Assuming just one missed meal period and one missed rest period per workweek) |
| | **$1,969,213** | Unpaid Wages (Assuming just 30 minutes of unpaid straight time per workweek) |
| · | **$1,677,960** | Waiting Time Penalties (Assuming just 6 hours of pay per day x 30 days) |

5.      **Attorneys' Fees**

56.     Plaintiff also seeks attorneys' fees.  (Ex. A, Complaint, Prayer For Relief, ¶¶ 8, 13, 21, 28, 34, 39, 45, 51, 57, 62, 67.) Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contribute s to the amount in controversy.")

57.     A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable

65354991v.1

estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at 1010-11); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

58.    In a recent decision, the Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious.").

59.    Indeed, the Ninth Circuit again very recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

60.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a

'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *28-29 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund). Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$2,881,006** in this case [$11,524,026 total amount in controversy x 0.25].

61.     Although Defendants deny Plaintiff's allegations that he or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, the total amount in controversy is at least **$14,405,032**, including attorneys' fees [$11,524,026 amount in controversy + $2,881,006 for attorneys' fees]. This estimate is extremely conservative because it only assumes **one** meal and rest period violation per week, **30 minutes** of unpaid wages per week, and **six hours** of pay per potential class member for waiting time penalties x 30 days - and does not include **any** estimates of the potential recovery for **four other class claims** asserted by Plaintiff. Thus, the total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

62.     Accordingly, because diversity of citizenship exists and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

63.     To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C.

1    section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to

2    28 U.S.C. section 1367(a).

3    **IV.    LABOR MANAGEMENT RELATIONS ACT ("LMRA") SECTION 301**

4    **REMOVAL**

5        64.    Federal question jurisdiction also arises out of the fact that Plaintiff's claims

6    are preempted by Section 301 of the Labor Management Relations Act ("Section 301" or

7    "LMRA"), 29 U.S.C. § 185.  Pursuant to Section 301, "[s]uits for violation of contracts

8    between an employer and a labor organization . . . may be brought in any district court of

9    the United States having jurisdiction of the parties without regard to the amount in

10   controversy or without regard to the citizenship of the parties."  *Firestone v. Southern*

11   *California Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000), *reh'g* denied 281 F.3d 801 (9th

12   Cir. 2002).  A collective-bargaining agreement is such a contract, and Section 301

13   preempts all state-law claims "founded directly on rights created by collective-bargaining

14   agreements."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987).  Section 301 also

15   "authorizes federal courts to fashion a body of federal law for the enforcement of these

16   collective bargaining agreements."  *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451,

17   77 S. Ct. 912, 1 L. Ed. 2d 972 (1957).

18       65.    State law claims which require interpretation of collective bargaining

19   agreements are also preempted by the LMRA.  *See, e.g.*, *Firestone v. S. Cal. Gas Co.*,

20   219 F.3d 1063, 1066-67 (9th Cir. 2000) (holding that plaintiffs' class action for unpaid

21   overtime pursuant to the California Labor Code was preempted because resolution of the

22   overtime claim required an interpretation of the collective bargaining agreement:

23   "[b]ecause the collective bargaining agreement must be interpreted to determine whether

24   the [employees' compensation agreement] provides for premium wage rates for overtime

25   work and, therefore, whether California's overtime exemption provision applies ...

26   Plaintiffs' state law claim is preempted by the LMRA.");  *Guinan v. Dean Foods of Cal.,*

27   *Inc.*, 16 Fed. Appx. 627, 629 (9th Cir. 2001) (holding that claim for unpaid wages for off-

28   the-clock work in violation of the California Labor Code was preempted by the LMRA

23

**DEFENDANT'S NOTICE OF REMOVAL**

because to determine what work was compensable required interpretation of the collective bargaining agreement); *Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 768-69 (2003) ("[Plaintiff's] statutory [Labor Code] claims, on the other hand, cannot be adjudicated without determining the meaning of the CBA and/or the side letters. … Such a determination would inherently require an interpretation of the side letters between [defendant] and the union, and thus places [Plaintiff's] wage claim squarely within the scope of section 301 preemption").[2]

As the United States Supreme Court explained in *Allis-Chalmers Corp. v. Lueck*:

> [W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law.

471 U.S. 202, 220 (1985). Thus, any state claim where a defendant alleges LMRA preemption as a defense may be subject to complete preemption and be removed if the court must interpret the parties' collective bargaining agreement. *See*, *e.g.*, *Metropolitan Life, Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987) ("Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims pre-

---

[2] *Accord Int'l Longshore & Warehouse Union, Local 142, AFL-CIO v. Foodland Super Mkt. Ltd.*, No. 04-00035-AG-LEK, 2004 WL 1554478, at *4 (D. Haw. Apr. 30, 2004) (finding Section 301 preemption where "the resolution of the state law claim necessarily involves the interpretation of the arbitration clause"); *Hollinquest v. St. Francis Med. Ctr.*, 872 F. Supp. 723, 726 (C.D. Cal. 1994) ("To determine whether Plaintiff was wrongfully terminated from her employment at St. Francis, this Court must examine the CBA. Accordingly, Plaintiff's first cause of action is preempted by the LMRA, because this Court must analyze and interpret the provisions of the CBA to determine whether Plaintiff was wrongfully terminated by St. Francis"); *Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1400 (9th Cir. 1985) (where state law cause of action for wrongful discharge "turns upon an interpretation of the collective bargaining agreement," plaintiff's "claims are preempted by federal law"); *Jackson v. S. California Gas Co.*, 881 F.2d 638, 643-44 (9th Cir. 1989) ("A claim that a discharge violates public policy is preempted…if it is bound up with interpretation of the collective bargaining agreement and furthers no state policy independent of the employment relationship"); *see also Whittier v. Kaiser Found. Hospitals*, No. CIVS 06-2693 FCD GGH, 2007 WL 776093, at *4 (E.D. Cal. Mar. 12, 2007) ("At its core, plaintiff's cause of action is not for wrongful termination in violation of public policy, but for wrongful termination in violation of the terms of the CBA").

empted by § 301 of the LMRA for such special treatment … the preemptive force of § 301 is so powerful as to displace entirely any state cause of action"); *Newberry v. Pacific Racing Association*, 854 F.2d 1142, 1146 (9th Cir. 1988) ("The preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement…and any state claim whose outcome depends on analysis of the terms of the agreement"); *Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir. 1988) (affirming removal and dismissal of the plaintiff's state law claims pursuant to LMRA preemption); *Young v. Anthony's Fish Grottos, Inc.*, 830 F. 2d 993, 997-98 (9th Cir. 1987) (Section 301 preemption supplants state claim with federal claim); *Greenly v. Sara Lee Corp.*, 2008 WL 192925230, at *21 (E.D. Cal. 2008) ("The United States Supreme Court has articulated that 'where the right [at issue in the lawsuit] is created by state law [but the application of state law] requires the interpretation of a [CBA],'" state law claims are preempted by Section 301).

66.     Decisions of the Ninth Circuit have repeatedly found that Section 301 preempts California state law claims that are dependent upon interpretation of a CBA. *Firestone*, 219 F.3d at 1066-67 (holding that plaintiffs' class action for unpaid overtime pursuant to the California Labor Code was preempted because resolution of the overtime claim required an interpretation of the collective bargaining agreement: "[b]ecause the collective bargaining agreement must be interpreted to determine whether the [employees' compensation agreement] provides for premium wage rates for overtime work and, therefore, whether California's overtime exemption provision applies ... Plaintiffs' state law claim is preempted by the LMRA.").  This is so even where the interpretation of a CBA was required to evaluate the employer's defense to a state law cause of action.  *See Audette v. International Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1113 (9th Cir. 1999) (civil rights claim preempted where interpretation of agreement was required in evaluating employer's defense that it had a legitimate non-business reason for its actions).

67.     Plaintiff did not specifically reference or invoke the terms of the CBA in his Complaint.  That is irrelevant.  Under the artful pleading doctrine, a plaintiff may not avoid federal jurisdiction simply by pleading a claim that can only be made under federal law as a state law claim.  *See Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984) ("[E]mployees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provision of the collective bargaining agreement . . . In such cases the 'artful pleading' doctrine requires that the state law complaint be recharacterized as one arising under the collective bargaining agreement.  The case may then be removed to federal court and adjudicated under the appropriate federal law."), *overruled on other grounds by Allis-Chalmers v. Lueck*, 471 U.S. 202, 220, 105 S. Ct. 1904 (1985); *Newberry*, 854 F.2d at 1146 ("[T]he key to determining the scope of section 301 preemption is not based on how the complaint is framed, but whether the claims can be resolved only by referring to the terms of the bargaining agreement."); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("The district court . . . properly looked beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction.").

68.     The class that Plaintiff seeks to represent in this matter includes employees covered by collective bargaining agreements ("CBAs").  (Bowlin Decl., ¶ 10, Exhs. A, B.)

69.     The CBAs which cover potential class members in this matter provide for wages, hours, conditions of employment, premium wage rates for overtime and regular rates of pay for those employees of not less than 30 percent more than the state minimum wage.  (Bowlin Decl., ¶ 10, Exh. A (Stockton CBA), at Sections 7-20, 26, 27, and Exh. A, Sections I-VI; Exh. B (Red Bluff CBA), at Articles 2-18 and Exhs. A, E.)

70.     Plaintiff's Complaint alleges violations of California Labor Code § 510 for unpaid overtime, based on allegations of "company-wide policies" of failure to pay

65354991v.1

overtime for hours worked over 8 in a day and/or over 40 in a week, and failure to pay correct overtime rates.  (Exh. A, Complaint, at 10:3; ¶¶ 44 - 48.)

71.     Labor Code § 510, however, "do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."  Cal. Labor Code § 514.

72.     Because the CBAs in this matter contain all of the necessary terms for an exemption from the overtime provisions of Labor Code § 510, per Labor Code § 514 - wages, hours of work, working conditions, premium wage rates, and regular hourly rates of pay of not less than 30 percent more than the state minimum wage - the overtime claims asserted in the Complaint are preempted by the LMRA and exist, if at all, under the terms of the CBAs.  *See Curtis v. Irwin Industries, Inc*., 913 F.3d 1146, 1154-55 (9th Cir. 2019) (finding that overtime claim was preempted by the LMRA and "fails at step one of the preemption analysis," because it is governed by the CBA rather than state law, and therefore arises, if at all, under the CBA rather than state law); *Vasquez v. Packaging Corp. of America*, 2019 WL 4543106, at *3 (C.D. Cal. June 7, 2019) ("[T]he Ninth Circuit's clarification that certain CBAs preempt overtime claims guides the Court's decision today.  In sum, the Court finds that Plaintiff's overtime claim (Second Cause of Action) is preempted under the LMRA and therefore the Court has federal question jurisdiction over it.").

73.     Plaintiff also alleges violations of California meal and rest period laws, based on "company-wide . . . polic[ies]" of failure to provide meal and rest periods, and failure to provide premium pay for instances when meal and rest periods were not provided in accordance with state law.  (Exh. A, Complaint, at ¶¶ 60, 61, 67-70.)

74.     The CBAs which cover certain potential class members in this matter contain provisions for meal and rest periods. (Bowlin Decl., ¶ 10, Exh. A (Stockton

DEFENDANT'S NOTICE OF REMOVAL
65354991v.1

CBA), at Section 9; Exh. B (Red Bluff CBA), at Article 3.)  Based on the allegations in Plaintiff's Complaint, there are obviously disputes over these provisions which require interpretation of the CBA.  Thus, the meal and rest claims asserted in Plaintiff's Complaint are "substantially dependent" on analysis of the CBA and therefore preempted by the LMRA.  *See Burnside v. Keiwit Pac. Corp.*, 491 F.3d at 1059-60; *See also Alvarez v. Transitamerica Services, Inc.*, 2019 WL 144592, at * 5 (N.D. Cal. Jan 9, 2019):

> Plaintiff's fifth cause of action is based upon allegations that . . . Defendants 'maintained a policy or practice of not providing' Plaintiff with uninterrupted, duty-free meal periods for at least thirty minutes for every five (5) hour work period . . . **To the extent the fifth cause of action challenges the validity of 'policies' with Defendants regarding meal periods, the claim requires interpretation of the CBAs. The only plausible sources of any meal agreement or policies between the parties are the CBAs . . . The validity of the meal agreement and policies cannot be determined without interpretation of the CBAs.** * * * Plaintiff [also] alleges that Defendants 'maintained a policy or practice of not providing' Plaintiff with a rest period of at least ten minutes for each four hour work period, or major fraction thereof . . . **To the extent the sixth cause of action challenges the validity of "written policies," the claim requires interpretation of Defendants' written policies, namely the CBAs. Accordingly, the sixth cause of action is preempted insofar as it challenges 'written policies.**'

2019 WL 144592, at * 5 (emphasis added and internal citations and punctuation omitted).

75.   **Supplemental Jurisdiction.**  If the Court determines that any of Plaintiff's claims raise a federal question under Section 301 of the LMRA, the Court may exercise supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. section 1367(a), since the claims arise as part of the same "case and controversy."  In particular, Plaintiff's claim for failure to pay all wages due at termination arises as part of the same "case and controversy" as the claims for unpaid overtime and failure to provide meal and rest periods and all of these claims relate to Plaintiff's claim for violation of the UCL. (Exh. A, Complaint, ¶ 107 (a)-(d).)  *See Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990) ("a district court may exercise pendent jurisdiction over

state law claims arising from a nucleus of operative fact common"). Considerations of convenience, judicial economy and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims in the Complaint, and Plaintiff "would ordinarily be expected to try [all of her claims] in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966).

## IV. VENUE

76.     Venue lies in the Central District of California pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and 84(c). This action originally was brought in the Superior Court of the State of California, County of San Bernardino, which is located within the Central District of the United States District Court for California. Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## V. NOTICE TO STATE COURT AND ALL PARTIES

77.     Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and all counsel of record, together with a copy of the Notice of Removal, and will be filed with the Clerk of the Superior Court of the State of California, County of San Bernardino, in the State Court Action.

78.     This Notice of Removal will be served on counsel of record for all parties. A Certificate of Service regarding the Notice of Removal and supporting documents will be filed concurrently.

79.     In compliance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Defendants in this action are attached to the Pelliconi Declaration as Exhibit A.

## VI. PRAYER FOR REMOVAL

80.     WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of San Bernardino, to the United States District Court for the Central District of California.

DEFENDANT'S NOTICE OF REMOVAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: August 21, 2020                    SEYFARTH SHAW LLP


By: _____ */s/ Bethany Pelliconi*
        Jon Meer
        Bethany A. Pelliconi
        Attorneys for Defendant
        PACTIV LLC

30

DEFENDANT'S NOTICE OF REMOVAL

65354991v.1