Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Mark A. Ozzello (SBN 116595)
Mark.Ozzello@capstonelawyers.com
Brandon Brouillette (SBN 273156)
Brandon.Brouillette@capstonelawyers.com
Joseph Hakakian (SBN 323011)
Joseph.Hakakian@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff Mark Wilson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK WILSON, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>PACTIV LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 5:20-cv-01691-SB-KK<br><br>Assigned to: Hon. Stanley Blumenfeld, Jr.<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    June 24, 2022<br>Time:    8:30 a.m.<br>Place:   Courtroom 6C |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 24, 2022 at 8:30 a.m., or as soon thereafter as counsel may be heard, in Department 6C of the above-captioned court, located at 350 West 1st Street, Los Angeles, California 90012, the Honorable Stanley Blumenfeld Jr. presiding, Plaintiffs Mark Wilson and Jack Rodriguez will, and hereby do, move this Court to:

1. Preliminarily approve the settlement set forth in the Joint Stipulation of Class Action Settlement and Release, attached as Exhibit 1 to the Declaration of Raul Perez;

2. Conditionally certify the proposed Settlement Class;

3. Appoint Mark Wilson and Jack Rodriguez as the representatives for the Settlement Class;

4. Appoint Capstone Law APC and Wilshire Law Firm, PLC as Class Counsel;

5. Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

6. Appoint CPT Group, Inc. as the Settlement Administrator; and

7. Set a hearing date for final approval of the settlement.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Raul Perez; (4) the Declaration of Justin F. Marquez; (5) the Joint Stipulation of Class Action Settlement and Release; (6) the Notice of Class Action Settlement; (7) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (8) the records, pleadings, and papers filed in this action; and (9) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
83784228v.1

1 | Dated: May 23, 2022

Respectfully submitted,

By: /s/ Brandon Brouillette

Mark A. Ozzello
Brandon Brouillette
Joseph Hakakian
**CAPSTONE LAW APC**
Attorneys for Plaintiff Mark Wilson

By: /s/ Christina M. Le

Justin F. Marquez
Christina M. Le
**WILSHIRE LAW FIRM, PLC**
Attorneys for Plaintiff Jack Rodriguez

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

83784228v.1

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.    FACTS AND PROCEDURE ...............................................................................1

    A.    *Wilson v. Pactiv LLC*, No. 5:20-cv-01691-SB-KK (C.D. Cal.) ...........................1

    B.    *Jack Rodriguez v. Pactiv LLC*, No. 5:21-cv-00841-SB-KK (C.D. Cal.) ............2

    C.    Plaintiffs' Counsel Conducted a Thorough Investigation of the Factual
        and Legal Issues and Were Thus Able to Objectively Assess the
        Settlement's Reasonableness ..................................................................................3

    D.    The Parties Settled After Mediation ......................................................................3

    E.    The Proposed Settlement Fully Resolves Plaintiffs' Claims ................................3

        1.    Composition of the Settlement Class.......................................................3

        2.    Settlement Consideration.........................................................................4

        3.    Formula for Calculating Payments from the Net Settlement Fund
            and PAGA Fund .......................................................................................4

        4.    Release by the Settlement Class and PAGA Members..............................4

III.    ARGUMENT .......................................................................................................4

    A.    Conditional Class Certification Is Appropriate for Settlement Purposes.............4

    B.    Predominance Is Readily Satisfied in the Settlement Context..............................5

    C.    The Court's Denial Of Class Certification In The Wilson Case Is Not An
        Impediment To Certification In The Settlement Context Or Approval Of
        The Settlement ......................................................................................................7

    D.    Plaintiffs Contend That Their Claims Present Predominant Questions of
        Law and Fact.........................................................................................................7

        1.    Plaintiffs' Regular Rate Claim Is Based On Common Evidence ...............7

        2.    Plaintiffs Contend That Their Meal Period Claim Is Suitable for
            Class Certification ....................................................................................9

        3.    Plaintiffs Contend That Their Rest Period Claim Is Suitable for
            Class Certification ..................................................................................10

83784228v.1

        4.    Plaintiff Wilson Contends That His Business Expense Claim Is
Suitable for Class Certification ...................................................................12

        5.    Plaintiffs Contend That Their Rounding Claim Is Suitable for Class
Certification ................................................................................................13

        6.    Plaintiffs Contend That The Court Should Certify Plaintiffs'
Derivative Claims .......................................................................................15

        7.    Plaintiffs Will Adequately Represent the Interests of the Proposed
Settlement Class .........................................................................................15

        8.    Class Settlement Is Superior to Other Available Means of
Resolution...................................................................................................16

    E.    The Proposed Class Notice Adequately Informs Class Members About
the Case And Proposed Settlement ...................................................................16

    F.    The Proposed Class Action Settlement Should Receive Preliminary
Approval..........................................................................................................17

    G.    The Relief Provided by the Settlement is Fair and Reasonable.........................18

        1.    The Gross Settlement Amount is Within the Range of
Reasonableness ..........................................................................................19

        2.    The Settlement Provides for an Equitable Method of Allocating
Relief to Class Members .............................................................................21

        3.    The Court Should Preliminarily Approve the Negotiated Attorneys'
Fees and Costs............................................................................................22

    H.    There Are No Obvious Deficiencies with the Settlement or Preferential
Treatment to Certain Class Members................................................................23

    I.    The Consideration Provided for the PAGA Claim Is Fair and Reasonable
In Light of the Amount in Controversy Discounted by the Risks of
Continued Litigation.......................................................................................24

IV.    CONCLUSION.............................................................................................26

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

83784228v.1

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)........................................................6

*Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157 (9th Cir. 2021)................................................24

*Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP, 2011 WL 672645
(N.D. Cal Feb. 16, 2011)........................................................25

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ..................................18

*Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473
(E.D. Cal. June 29, 2016)........................................................25

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010)......................................15

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d
732 (1974)........................................................17

*Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011
WL 7563047 (C.D. Cal. Aug. 12, 2011) ........................................................25

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ........................................................18

*Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL
5364575 (E.D. Cal. Oct. 31, 2012)........................................................25

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................15, 16, 18

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133
(N.D. Cal. Apr. 3, 2009)........................................................25

*In re Armored Car Antitrust Litig.*, 472 F. Supp. 1357 (N.D. Ga. 1979) ..........................21

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)........................23

*In re Hyundai & Kia Fuel Econ. Litig. ("Hyundai II")*, 926 F.3d 539 (9th
Cir. 2019) ........................................................5, 6

*In re Lithium Ion Batteries Antitrust Litigation*, No. 13-MD-02420 YGR
(DMR), 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020)........................................................7

*In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp.
2d 708 (E.D. Pa. 2014)........................................................18

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078 (N.D. Cal. 2007) ........................... 19

*In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act*

    *(FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) .............................................. 21

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) ............................ 21

*La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014

    WL 2967475 (C.D. Cal. June 25, 2014) .............................................................. 23

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ................................. 19

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ........................ 22

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ............................................. 6

*Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342

    ((S.D. Cal. Aug. 4, 2016) ..................................................................................... 18

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........................ 19

*Pena v. Taylor Farms Pacific, Inc.*, 2:13-cv-01282-KJM-AC, 2020 WL

    6392576 (E.D. Cal. Nov. 2, 2020) ........................................................................ 7

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ................................................. 19

*Romero v. Securus Technology, Inc.*, 16-cv-1283 JM (MDD), 2020 WL

    3250599 (S.D. Cal. June 16, 2020) ....................................................................... 7

*Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453 (N.D. Cal. Mar. 24,

    2016) ....................................................................................................................... 19

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018) ........................................... 14

*Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011) ...................................................................... 7

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) ........................................... 11

*Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901 (N.D. Cal. 2009) ................................. 12

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ................................................. 22

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) ................................. 16

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir.2010) ........................ 11

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) .............................. 5

**STATE CASES**

*Acree v. General Motors Acceptance Corp.*, 92 Cal. App. 4th 385 (2001) .......................10

*Advanced-Tech Sec. Servs., Inc. v. Super. Ct.*, 163 Cal. App. 4th 700 (2008) ....................7

*Alcala v. W Ag Enters.*, 182 Cal. App. 3d 546 (1986) ...............................................7

*Alvarado v. Dart Container Corp. of Cal.*, 4 Cal.5th 542  (2018) ........................................8

*Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521 (2021)...............................23

*Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016).......................................11

*Bono Enterprises, In. v. Bradshaw*, 32 Cal. App. 4th 968 (1995).......................................11

*Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012) ..............................................9, 11

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ............................................25

*Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal. App. 4th 220 (2013).............................11

*Huntington Mem 'l Hospital v. Super. Ct.*, 131 Cal. App. 4th 893 (2005) ..........................7

*Laffitte v. Robert Half Internat. Inc.*, 231 Cal. App. 4th 860 (2016) (*Laffitte I*).................23

*Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000)..............................................22

*Marin v. Costco Wholesale Corp.*, 169 Cal.App.4th 804 (2009).......................................8

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576  (2010).................................................25

*Sav-On  Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319 (2004) ........................................10

*See's Candy, Inc. v. Superior Ct.*, 210 Cal. App. 4th 889 (2012) ............................... 13, 14

*Serrano v. Priest*, 20 Cal. 3d 25 (1977).........................................................................22


**FEDERAL STATUTES**

2 U.S.C. § 207(e) ......................................................................................................7

29 C.F.R. § 778.117 ..................................................................................................8

29 C.F.R. § 778.209 ..................................................................................................8

29 C.F.R. §785.48(b).................................................................................................13

29 U.S.C. §§ 201 *et seq*. (Fair Labor Standards Act (FLSA)) ................................8

Fed. R. Civ. P. 23......................................................................................................16

Fed. R. Civ. P. 23(a) .............................................................................................5, 15

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  Fed. R. Civ. P. 23(a)(4) ........................................................................................15

2  Fed. R. Civ. P. 23(b) ...............................................................................................5

3  Fed. R. Civ. P. 23(b)(3) ...........................................................................................5

4  Fed. R. Civ. P. 23(c)(2) ....................................................................................16, 17

5  Fed. R. Civ. P. 23(e)(1) ...........................................................................................5

6  Fed. R. Civ. P. 23(e)(1)(A) ....................................................................................17

7

8  **STATE STATUTES**

9  8 Cal. Code Regs. § 13520 .....................................................................................20

10  Cal. Lab. Code § 201 ..............................................................................................15

11  Cal. Lab. Code § 202 ..............................................................................................15

12  Cal. Lab. Code § 203 ..............................................................................................15

13  Cal. Lab. Code § 204 ................................................................................................2

14  Cal. Lab. Code § 226 ..............................................................................................15

15  Cal. Lab. Code § 226.7(b) ..................................................................................9, 10

16  Cal. Lab. Code § 1194 ............................................................................................15

17  Cal. Lab. Code § 1197 ............................................................................................15

18  Cal. Lab. Code § 1197.1 .........................................................................................15

19  Cal. Lab. Code § 1198 ............................................................................................15

20  Cal. Lab. Code § 2699(h) .......................................................................................24

21  Cal. Lab. Code § 2802 ............................................................................................12

22  Cal. Lab. Code §§2698, *et seq.* (Private Attorneys General Act) ..........................2

23  Cal.. Lab. Code § 510(a) ...........................................................................................7

24

25  **SECONDARY AUTHORITIES**

26  3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) ....................18, 19

27  Manual for Complex Litigation (4th ed. 2004) ......................................................17

28  Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure

83784228v.1

Before Trial, California & 9th Cir. Editions (The Rutter Group, 2015) .........................22

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

83784228v.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Mark Wilson and Jack Rodriguez are the named plaintiffs ("Plaintiffs") in two separate actions brought against Defendant Pactiv LLC ("Defendant" or "Pactiv") (collectively with Plaintiffs, the "Parties") for wage and hour violations: (1) *Mark Wilson v. Pactiv LLC*, No. 5:20-cv-01691-SB-KK (C.D. Cal.) (the "Wilson Action") and (2) *Jack Rodriguez v. Pactiv LLC*, No. 5:21-cv-00841-SB-KK (C.D. Cal.) (the "Rodriguez Action") (collectively, the "Actions"). The Actions allege overlapping Labor Code violations and have been litigated for the past two years. Following a thorough investigation and evaluation of their respective claims and defenses, the Parties participated in a joint mediation session with Louis Marlin, Esq., an experienced mediator of wage and hour class and representative actions. With Mr. Marlin's guidance, the Parties were able to negotiate a global settlement of the two actions for $500,000.

Plaintiffs now seek preliminary approval of the Joint Stipulation of Class Action Settlement and Release,[1] which if approved, would provide valuable monetary relief for approximately 2,000 Class Members. The Settlement was negotiated by the Parties at arm's length with helpful guidance from their mediator, and the Settlement confers substantial benefits to Class Members. This relief—averaging approximately $100 per Class Member from the Net Settlement Fund—is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases.

For the reasons discussed in more detail below, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement Agreement.

## II.    FACTS AND PROCEDURE

### A.    *Wilson v. Pactiv LLC*, No. 5:20-cv-01691-SB-KK (C.D. Cal.)

Pactiv employed Plaintiff Mark Wilson as a non-exempt, hourly paid employee

---

[1] Hereinafter "Settlement Agreement" or "Settlement." Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

83784228v.1

1  from August 2017 through March 19, 2020. (Dkt. No. 23; First Amended Complaint

2  ["FAC"] ¶ 5.) He worked as a Lift Truck Operator at Pactiv's warehouse location in San

3  Bernardino, California, where he unloaded and loaded trailers, organized produce in the

4  warehouse, and formed and packaged pallets for shipment. (*Id.*)

5        On May 29, 2020, Plaintiff Wilson filed this action in the Superior Court of

6  California for the County of San Bernardino. (Dkt. No. 1-Ex. A.) On August 21, 2020,

7  Defendant removed the action to this Court. (Dkt. No. 1.)

8        On April 28, 2021, Plaintiff amended his complaint to include a claim under the

9  Private Attorneys General Act, Labor Code §§2698, *et seq*. (Dkt. No. 23.) On August 6,

10  2021, Plaintiff filed his motion for class certification. (Dkt. No. 31.) On December 3,

11  2021, the Court denied the motion. (Dkt. No. 46.) Following the denial of the motion,

12  Plaintiff resumed litigation as to his claim for PAGA civil penalties.

13        **B.    *Jack Rodriguez v. Pactiv LLC*, No. 5:21-cv-00841-SB-KK (C.D. Cal.)**

14        Pactiv employed Plaintiff Jack Rodriguez as a non-exempt, hourly paid employee

15  from August 24, 2017 through February 27, 2020. (Dkt. No. 5 – Ex. A.) Like Plaintiff

16  Wilson, Plaintiff Rodriguez also worked as a Lift Truck Operator at Pactiv's warehouse

17  location in San Bernardino, sharing the same duties as Plaintiff Wilson, while working the

18  swing shift (1:00 pm to 9:30 pm). (*Id.*)

19        On February 22, 2021, Plaintiff Rodriguez filed this action in the Superior Court of

20  California for the County of San Bernardino, alleging violations of the following Labor

21  Code and Business and Professions Code sections: (1) 204, 1194, 1194.2, and 1197

22  (failure to pay minimum and straight time wages), (2) 1194 and 1198 (failure to pay

23  overtime wages), (3) 226.7, 512 (failure to provide meal periods), (4) 226.7 (failure to

24  provide rest periods), (5) 201-203 (failure to timely pay final wages at termination), (6)

25  226 (failure to provide accurate itemized wage statements); and (7) Cal. Bus. & Prof.

26  Code §§ 17200, *et seq*. (unlawful and unfair business practices). (*Id.*)

27        On May 12, 2021, Defendant removed the action to this Court. (Dkt. No. 1.)

28

**C.      Plaintiffs' Counsel Conducted a Thorough Investigation of the Factual and Legal Issues and Were Thus Able to Objectively Assess the Settlement's Reasonableness**

Plaintiffs' Counsel thoroughly engaged in the discovery process and made use of documents and data produced by Defendant (including Class Members' payroll records and Defendant's written labor policies manuals), information provided by Class Member declarants and interviewees, and deposition testimony (from over 30 depositions) to assess Defendant's potential exposure as to Plaintiffs' claims. (*See* Perez Decl. ¶¶ 5-12; Marquez Decl. ¶¶ 12-15.) By engaging in such a thorough investigation and evaluation of Plaintiffs' claims, Plaintiffs' Counsel can opine that the Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is fair, reasonable, adequate, and is in the best interests of Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation. (*Id.*)

**D.      The Parties Settled After Mediation**

On April 7, 2022, the Parties participated in full-day mediation with Mr. Marlin, an experienced mediator of wage and hour class and representative actions. Mr. Marlin helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. With Mr. Marlin's guidance, the Parties were eventually able to negotiate a complete settlement of Plaintiffs' claims. The terms of the settlement are now set forth in complete and final form in the Settlement. (Perez Decl. ¶ 4, Ex. 1.) At all times, the Parties' negotiations were adversarial and non-collusive.

**E.      The Proposed Settlement Fully Resolves Plaintiffs' Claims**

**1.      Composition of the Settlement Class**

The proposed Settlement Class consists of all persons who are employed or have been employed by Defendant in California as hourly-paid or non-exempt employees at any time during the time period from May 29, 2016 to the earlier of: (i) July 6, 2022 or (ii) Preliminary Approval. (Settlement Agreement ¶ 5.) There are approximately 2,000 Class Members. (*Id.* at ¶ 48.)

83784228v.1

### 2.    Settlement Consideration

Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange for the Gross Settlement Amount of $500,000. The Gross Settlement Amount includes: (1) automatic payments to all Participating Class Members—meaning, all Class Members except those who submit timely and valid Requests for Exclusion—from the Net Settlement Fund; (2) $166,667 in attorneys' fees (i.e., one-third of the common fund) and up to $50,000 in litigation costs to Plaintiffs' Counsel; (3) Settlement Administration Costs of approximately $20,000; (4) a $30,000 payment to the LWDA and a $10,000 payment to PAGA Members; and (5) Class Representative Enhancement Payments of $10,000, each, for Plaintiffs' service on behalf of the Settlement Class, the risks they took in bringing their representative claims, and for general releases of all claims arising out of their employment with Defendant. (Settlement Agreement ¶¶ 32-36.)

### 3.    Formula for Calculating Payments from the Net Settlement Fund and PAGA Fund

Payments to Class Members from the Net Settlement Fund, and payments to PAGA Members from the PAGA Fund, will be in proportion to the number of Pay Periods during which Class Members and PAGA Members worked during the applicable Class Period and PAGA Period. (Settlement Agreement ¶ 40.)

### 4.    Release by the Settlement Class and PAGA Members

In exchange for the Gross Settlement Amount, Plaintiffs and Participating Class Members will agree to release the Released Class Claims during the Class Period. (Settlement Agreement ¶¶ 25, 50.) And in exchange for the PAGA Settlement Amount, Plaintiffs and PAGA Members will agree to release the Released PAGA Claims during the PAGA Period. (Settlement Agreement ¶¶ 26, 51.)

## III.    ARGUMENT

### A.    Conditional Class Certification Is Appropriate for Settlement Purposes

The Parties seek conditional certification of the Settlement Class. A party seeking to certify a class must demonstrate that it has met all four requirements under Federal Rule

of Civil Procedure 23(a),[2] and at least one of the requirements of Rule 23(b)—in this case,
Rule 23(b)(3). *See Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

At this stage, the Court only needs to make a preliminary determination as to the
appropriateness of class certification for settlement purposes, not trial. In 2018, Congress
changed Rule 23 by authorizing a court to send notice of a proposed settlement to the class
if the parties have demonstrated that it is "likely" the court will be able to approve the
settlement and "certify the class for purposes of judgment on the proposal" after a notice
and objection period. Fed. R. Civ. P. 23(e)(1); 4 Newberg on Class Actions § 13:17 (5th
ed.). The 2018 Advisory Committee Notes further explain:

> if a class has not been certified, the parties must ensure that the court has a
> basis for concluding that it likely will be able, after the final hearing, to certify
> the class. Although ***the standards for certification differ for settlement and
> litigation purposes***, the court cannot make the decision regarding the prospects
> for certification without a suitable basis in the record. ***The ultimate decision
> to certify the class for purposes of settlement cannot be made until the
> hearing on final approval of the proposed settlement***.

Fed. R. Civ. P. 23(e)(1) advisory committee's notes to 2018 amendment (emphasis
added).

### B.    Predominance Is Readily Satisfied in the Settlement Context

In the Ninth Circuit, the general rule is that predominance is readily satisfied in the
settlement context. *In re Hyundai & Kia Fuel Econ. Litig. ("Hyundai II")*, 926 F.3d 539
(9th Cir. 2019). This legal principle is set forth in detail in *Hyundai II*.

In *Hyundai II*, a putative class of consumers sued the automaker Hyundai under
California consumer-protection law, among other claims, alleging that Hyundai "misled
consumers throughout the United States by advertising inflated fuel economy standards"
in particular vehicles. *Id.* at 553. The district court considered class certification for trial
and for settlement. At first the court indicated that it was likely to deny class certification

---

[2] Rule 23(a) provides that, to certify a class, Plaintiffs must demonstrate that "(1)
the class is so numerous that joinder of all members is impracticable; (2) there are
questions of law or fact common to the class; (3) the claims or defenses of the
representative parties are typical of the claims or defenses of the class; and (4) the
representative parties will fairly and adequately protect the interests of the class."

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

for trial. *In re Hyundai & Kia Fuel Econ. Litig. (Hyundai I)*, 881 F.3d 679, 692-93 (9th Cir. 2018) (citing *Mazza*, 666 F.3d at 590-92). Later, when asked to certify a class for settlement purposes, the district court determined that "such an [extensive choice-of-law] analysis," as *Mazza* required, "was not warranted in the settlement context." *Id.* at 700. Instead, consistent with *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), the district court held that common questions, such as "[w]hether the fuel economy statements were in fact accurate" and "whether defendants knew that their fuel economy statements were false or misleading," predominated. *Id.* at 708 (Nguyen, J., dissenting) (alteration in original).

The Ninth Circuit reviewed the decision and a three-judge panel relied on *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) to reverse on appeal. *Id.* at 702-03 (majority opinion). The panel reasoned that, "[i]n failing to apply California choice of law rules, the district court committed a legal error" because, "[a]s explained in *Mazza*, the district court was required to apply California's choice of law rules." *Id.* at 702. The distinction between certifying a class for trial or settlement, the panel concluded, was immaterial. *Id.* at 702-03.

An en banc panel of the Ninth Circuit then reversed that decision after a rehearing. The en banc panel clarified that "[t]he criteria for class certification are applied differently in litigation classes and settlement classes." *Hyundai II*, 926 F.3d at 556. In the settlement context, a district court assessing predominance "need not inquire whether the case, if tried, would present intractable management problems." *Id.* at 558 (*quoting Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Reaffirming *Hanlon*, the en banc panel explained that common issues like whether the fuel economy statements were inaccurate and whether the automakers knew about the inaccuracy were the sort of "common course of conduct by [a] defendant" that can establish predominance. *Id.* at 559. Certification of a class for settlement purposes here is consistent with *Hyundai II* because, again, certification is <u>not</u> being sought in the context of trial and, as discussed below, there are many common issues among the class.

83784228v.1

**C.    The Court's Denial Of Class Certification In The Wilson Case Is Not An Impediment To Certification In The Settlement Context Or Approval Of The Settlement**

On December 3, 2021, the Court denied Plaintiff Wilson's Motion for Class Certification, finding that individualized inquiries would predominate as to all proposed classes. (Cert. Order at 7-9). The Court's findings have no preclusive effect in the Rodriguez case (*see e.g.*, *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379-82 (2011), and do not preclude the Court's ability to certify any classes for settlement purposes in either case, or to approve the settlement as requested in this motion. As numerous district courts in the Ninth Circuit have found, class action settlements may be approved notwithstanding an earlier finding that the claims were found to be unsuitable for class treatment.[3]

**D.    Plaintiffs Contend That Their Claims Present Predominant Questions of Law and Fact**

**1.    Plaintiffs' Regular Rate Claim Is Based On Common Evidence**

Pursuant to California law, any work in excess of eight hours in a workday and forty hours in a workweek must be "compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code§ 510(a) (emphasis added). California has adopted the definition of the "regular rate of pay" set forth in the Fair Labor Standards Act. *Advanced-Tech Sec. Servs., Inc. v. Super. Ct.*, 163 Cal. App. 4th 700, 707 (2008); *Huntington Mem 'l Hospital v. Super. Ct.*, 131 Cal. App. 4th 893, 902 (2005); *Alcala v. W Ag Enters.*, 182 Cal. App. 3d 546, 550 (1986). With the exception of several statutory exclusions not applicable here, the regular rate of pay includes all remuneration paid to an employee. 2 U.S.C. § 207(e).

---

[3] *See e.g., In re Lithium Ion Batteries Antitrust Litigation*, No. 13-MD-02420 YGR (DMR), 2020 WL 7264559, * 10 (N.D. Cal. Dec. 10, 2020); *Romero v. Securus Technology, Inc.*, 16-cv-1283 JM (MDD), 2020 WL 3250599, *2, 8 (S.D. Cal. June 16, 2020); *Pena v. Taylor Farms Pacific, Inc.*, 2:13-cv-01282-KJM-AC, 2020 WL 6392576, * 3-8 (E.D. Cal. Nov. 2, 2020).

83784228v.1

Section 207(e) of the FLSA defines the regular rate as including "all remuneration for employment paid to, or on behalf of, the employee," with the exception of a few enumerated statutory exclusions not applicable here. Thus, all non-discretionary bonuses must be included in the regular rate. 29 C.F.R. §§ 778.208-778.215; *see also* DLSE Manual §49.2.4.3 (flat amount retention bonus paid at end of "season" allocated to regular rate of pay for all 768 hours worked in the season); 29 C.F.R. § 778.209 (requiring retroactive allocation of bonus to overtime worked in preceding work weeks during which bonus was earned); *Marin v. Costco Wholesale Corp.*, 169 Cal.App.4th 804, 816-20 (2009) (approving allocation of flat amount bonus paid at end of 6-month period to 1,000 hours, including overtime hours, worked during 6-month period); *Alvarado v. Dart Container Corp. of Cal.*, 4 Cal.5th 542, 573 (2018)(requiring flat-sum bonuses to be included in the regular rate).

Plaintiffs allege that Defendant did not factor in bonuses, gainsharing, safety incentives, and non-cash awards in the calculation of the regular rate. Plaintiffs contend that common questions predominate as to Plaintiff's regular rate claim. These common questions include:

- Whether Pactiv's payments of bonuses, gainsharing, safety incentive, and non-cash awards were discretionary or non-discretionary, and

- Whether the non-discretionary payments were properly factored into the regular rate.

These are 'either or' questions applicable to all Class members based on Pactiv's uniform policies and practices. The payments were either discretionary or they were not. If they were non-discretionary, then either they were properly factored into employees' overtime and double-time calculations or they were not. Because these questions are capable of being answered based on common evidence applicable to all Class members, class certification is appropriate.[4]

_____

[4] In ruling on Plaintiff Wilson's Motion for Class Certification, the Court denied certification because Plaintiff did not provide evidence that other employees were injured by this practice. Plaintiff Wilson presented evidence via his paychecks that two of his 68

Accordingly, for purposes of this motion, the Court should find that common issues of fact and law predominate as to the regular rate claim.

### 2. Plaintiffs Contend That Their Meal Period Claim Is Suitable for Class Certification

"An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code § 512(a). Additionally, an employee may not work more than 10 hours without being provided a second meal period. *Id.* Where an employee does not receive a timely meal period of at least 30 minutes, the employer is required to pay the employee one additional hour of pay at the employee's regular rate of compensation. Cal. Lab. Code § 226.7(b).

Plaintiffs allege that Pactiv failed to provide second meal periods when employees worked more than 10 hours at its San Bernardino location.[5] Plaintiffs contend that this particular claim is readily certifiable. Even before *Brinker v. Superior Court*, 53 Cal. 4th 1004 (2012), class certification rules were not as demanding as employers typically

---

pay periods showed regular rate violations. (Cert. Order at 12.) Plaintiff also presented evidence in the form of the Declaration of Eric Lietzow, which provided that there were 86 pay periods within the sample payroll data analyzed where employees were paid one or more of these non-discretionary earnings payments during the same weekly pay period that they earned overtime wages. (Cert. Mot. at 5.)

Despite this showing, the Court held that Plaintiff failed to show a common practice of regular rate violations. (Cert. Order at 12-13.) However, Plaintiffs contend that additional common evidence not presented in Plaintiff Wilson's motion for class certification, such as representative person most knowledgeable testimony regarding Defendant's payroll practices and additional expert calculations for a sample of class members would establish that common issues predominate as to the regular rate class.

[5] The Court denied Plaintiff Wilson's motion for class certification as to this theory. Plaintiffs contend that Pactiv's on-site Human Resources manager at the time, Tamara Woods, changed the company's practice after Plaintiff Wilson complained in or around February 2020. Although Plaintiff Wilson testified as these facts at his deposition, Plaintiff Wilson's counsel was unable to locate and depose Ms. Woods (who is no longer employed by Pactiv and is now believed to reside in Colorado) prior to filing his motion for class certification. Plaintiff Wilson nonetheless believed sufficient evidence has been gathered to certify the second meal break claim for the San Bernardino location based on what Plaintiff contended was a facially non-compliant meal break policy. The Court obviously disagreed in denying certification. However, the fact of the matter is that Plaintiffs anticipate Ms. Woods' testimony would provide further common evidence of a non-compliant meal break practice that will support certification of the second meal break claim as to the San Bernardino location.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

83784228v.1

represent. "Predominance is a comparative concept,' and 'the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate.' [Citations.]" *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 334 (2004) ("*Sav-On*") (citation omitted). Thus, "[a] class action can be maintained even if each class member must at some point individually show his or her eligibility for recovery or the amount of his or her damages, so long as each class member would not be required to litigate substantial and numerous factually unique questions to determine his or her individual right to recover." *Acree v. General Motors Acceptance Corp.*, 92 Cal. App. 4th 385, 397 (2001), fn. omitted.

As to this theory, Plaintiffs contend that common questions predominate:

- Whether Defendant violated California law by failing to permit Class Members from taking a second meal period when they worked more than 10 hours;

- Whether Defendant's uniform meal period policy violates California law by failing to give full effect to applicable Wage Order; and

- Whether Defendant was required to pay Class Members premium compensation for failing to permit them from taking a second meal period when they worked more than 10 hours.

Accordingly, for purposes of this motion, the Court should find that common issues of fact and law predominate as to the meal period claim.

### 3.    Plaintiffs Contend That Their Rest Period Claim Is Suitable for Class Certification

Under the applicable IWC Wage Order, an employer is required to authorize and permit all employees to take duty free rest periods at the rate of at least 10 minutes for every four hours worked or major fraction thereof. When an employer fails to provide an employee a paid rest period in accordance with the Wage Order, that employer shall pay the employee one hour of pay at the employee's regular rate of pay for each work day that the rest period is not provided. IWC Wage Order; Cal. Lab. Code § 226.7(b).

Plaintiffs allege that Defendant unlawfully prohibited employees from leaving the worksite during their rest periods. Thus, Defendant allegedly violates the requirements of the Wage Order and the Labor Code by not allowing employees to use their rest breaks for

83784228v.1

their own purposes because they are prohibited from leaving the premises during their rest breaks.[6] The California Supreme Court has confirmed that an employer is required to relieve an employee of all duties during rest breaks. *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016) ("[D]uring rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time.")

It is well established that an employer cannot require employees to remain on the premises during meal period. *See Bono Enterprises, In. v. Bradshaw*, 32 Cal. App. 4th 968 (1995). The Supreme Court has confirmed that the same is true for rest breaks:

> It would be difficult to cast aside section 226.7's parallel treatment of meal periods and rest periods and conclude that employers had completely distinct obligations when providing meal and rest periods. What makes sense instead is to infer that employers' responsibility are the same for meal and rest periods— an inference that also reflects the protective purpose of both. *Augustus*, slip op. at 9.

Indeed, the Supreme Court specifically found that on-duty rest periods in which the

---

[6] Plaintiff Wilson sought certification of his rest break claim based on an on-premises theory. However, Plaintiff Wilson largely relied on class member declarations, which the Court found to be insufficient to establish a common practice. Plaintiffs contend that additional discovery, such as site manager depositions would yield further common evidence of a policy and practice that employees were not permitted to leave the premises during rest periods. And if a common rest break policy can be established, then whether certain employees, such as Defendant's declarants, would nonetheless leave the premises during their rest breaks would go to damages.

But differences in the amount of individual damages do not by themselves defeat class certification. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir.2010). The critical distinction between individual issues concerning liability and damages is well developed under California law in the context of meal and rest break claims. In *Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal. App. 4th 220, 224 (2013), disapproved on other grounds by *Noel v. Thrifty Payless, Inc.*, 7 Cal. 5th 955, 445 P.3d 626 (2019), the Court reconsidered its prior ruling affirming a denial of class certification in light of the Brinker holding. Prior to *Brinker*, in *Faulkinbury I*, the Court concluded that even if the on-duty meal break policy at issue was unlawful, the defendant would only be liable when it actually failed to provide a required off-duty meal break. *Id.* at 235. In reliance on employee declarations evidencing a variation in practice (i.e. some employees stated they nevertheless got break away from their posts), the Court denied certification. However, post *Brinker*, the Court reached a different conclusion, recognizing the defendant would be liable if the on-duty meal policy was unlawful, regardless of whether it actually failed to provide a required off-duty meal break. *Id.* at 236-37. The Court recognized the important distinction between individual issues impacting liability as compared to damages. "While, in *Faulkinbury I*, we concluded this evidence established individual issues of liability, we are now convinced, in light of *Brinker*, this evidence at most establishes individual issues of damages, which would not preclude class certification." *Id.* at 237.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

employer can require employees to remain on the premises is permitted "only in starkly limited circumstances." *Id.* at 12.

Plaintiffs contend that common questions predominate as to their rest period claim because Defendant's rest period policy creates the following class-wide issues:

- Whether Defendant violates California law by failing to permit Class Members from leaving their premises during their rest periods;

- Whether Defendant's uniform written rest period policy violates California law by failing to give full effect to applicable Wage Order; and

- Whether Defendant was required to pay Class Members premium compensation for prohibiting them from leaving the premises during their rest periods.

Accordingly, for purposes of this motion, the Court should find that common issues of fact and law predominate as to the rest period claim.

### 4. Plaintiff Wilson Contends That His Business Expense Claim Is Suitable for Class Certification

Plaintiff Wilson alleges that Pactiv failed to fully reimburse its employees for steel-toed boots required for work and for cost of mileage to use personal vehicles to travel to and from employer-mandated drug tests and physical examinations. Plaintiff therefore alleges that Defendant should have reimbursed Class Members for these expenses.

The California Labor Code provides that: "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer . . . ." Cal. Lab. Code § 2802 (emphasis added). The statutory right to reimbursement cannot be waived. *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 902 (N.D. Cal. 2009) ("Section 2802 is subject to an anti-waiver provision"); Cal. Lab. Code § 2804.

Plaintiff Wilson maintains that common evidence—in the form of Defendant's written policies, corporate representative testimony, and class member declarations— would answer the predominant common questions of whether Defendant had a policy and practice of failing to reimburse employees for these expenses.

Defendant's liability for this claim could be addressed by the following predominating common questions:

- Whether Defendant violated California law by failing to reimburse employees for transportation expenses incurred in the course of completing employment related physical examinations;

- Whether Defendant violated California law by failing to reimburse employees for the cost of steel toed boots.

Accordingly, for purposes of this motion, the Court should find that common issues of fact and law predominate as to the business expense claim.

### 5.    Plaintiffs Contend That Their Rounding Claim Is Suitable for Class Certification

Plaintiffs allege that Pactiv maintained an unlawful rounding policy and practice that, in effect, "rounded" employee time in a manner that exclusively benefitted Pactiv. Employees were permitted to clock in within a 7 minute grace period prior to their shift start time, and were disciplined if they clocked in late, after the time their shift started. Plaintiffs contend that any amount of minutes that employees clocked in before their shift start time was rounded off, such that employees were paid based on their scheduled start time only. On the other hand, Plaintiffs contend that if employees clocked in a few minutes after their scheduled start time, their time was not rounded, instead employees were paid based on their actual clock in time.

To be lawful, rounding of employee time records must be fair and neutral and "not result, over a period of time, in failure to compensate employees properly for all the time they have actually worked." 29 C.F.R. §785.48(b); *See's Candy Shops, Inc. v. Sup. Ct.*, 210 Cal.App.4th 889, 900-902, 907-908 (2012). Thus, if rounding operates in only one direction or otherwise favors the employer by consistently and disproportionately rounding time against the employee, the rounding policy is unlawful. *Id.*

The Court denied certification of this claim in *Wilson.* However, critically, the Court denied Plaintiff's argument, raised for the first time on reply, that "certification of the Rounding Class that employees remained under Defendant's control during the grace

period." (Cert. Order at 11.) On Reply, Plaintiff Wilson argued that, after employees clock in, they are "tethered to the work site," which is sufficient under California law to establish Defendant's control. *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1010 (9th Cir. 2018), cert. dismissed, 139 S. Ct. 1651, 203 L.Ed.2d 921 (2019) (recognizing that under California law "time is compensable if an employee is 'under the control' of his or her employer, ***whether or not he or she is engaging in work activities***, such as by being required to remain on the employer's premises or being restricted from engaging in certain personal activities.") (emphasis added) Thus, the mere fact that some employees sat down or drank coffee while on the clock is not dispositive if employees were expected to remain on the premises at the ready before the start of their shift.

In furtherance of Plaintiff Wilson's argument raised for the first time on reply, Plaintiffs contend that additional representative evidence—in the form of deposition testimony from Defendant's managers and additional class member declarations—would demonstrate that all employees at each location were required to remain on the premises after they clocked in and during the seven-minute "grace period." Moreover, Plaintiffs would present additional common evidence that, in contrast to *See's Candy, Inc. v. Superior Ct.*, 210 Cal. App. 4th 889, 911 (2012), Pactiv <u>strictly</u> enforced its own attendance policy and disciplined employees who clocked in one minute late, thus ensuring they were never provided the benefit of Pactiv's rounding adjustments. (*See* ECF No. 46 at 11, fn 4.) In essence, Plaintiffs allege that Pactiv's policy transferred the operating costs of adding additional time clocks on to employees who were then inconvenienced by having to clock in a few minutes early every day without being paid for that time.

Plaintiffs contend the following common questions predominate as to Plaintiffs' rounding claim:

- Whether Defendant's rounding policy unfairly benefits Defendant at the detriment of employees;

- Whether Defendant's rounding policy, over time, fails to compensate employees for all hours worked;

- Whether employees are free to leave the premises after clocking prior to the

scheduled shift start time;

- Whether pursuant to Defendant's attendance policy, employees were punished for clocking in one minute late such that they were precluded from benefiting from Defendant's rounding policy.

Accordingly, for purposes of this motion, the Court should find that common issues of fact and law predominate as to the rounding claim.

### 6.    Plaintiffs Contend That The Court Should Certify Plaintiffs' Derivative Claims

Plaintiffs' complaints include claims pursuant to Labor Code sections 226, 1198, 1194, 1197, 1197.1, 201, 202, 203 and 204 and California Business & Professions Code sections 17200, *et seq.* These claims are derivative of Plaintiffs' underlying claims for minimum wage violations and meal and rest period premiums. Plaintiffs contend that, for the same reasons that the Court should conditionally certify the underlying claims, it should certify the derivative claims. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal. 2010).

### 7.    Plaintiffs Will Adequately Represent the Interests of the Proposed Settlement Class

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if: (1) the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The Rule 23(a) adequacy requirement is met here as Plaintiffs have and will represent putative Class Members with a focus and zeal true to the fiduciary obligation that they has undertaken. Plaintiffs' Counsel also satisfies the Rule 23(a)(4) adequacy-of-counsel requirement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"). Plaintiffs are represented by Capstone Law APC and Wilshire Law Firm, PLC. Plaintiffs' Counsel employ seasoned class action attorneys, and have considerable

experience settling wage and hour class actions. (Perez Decl. ¶¶ 29-37, Ex. 2; Marquez Decl. ¶¶ 41-50.) Indeed, this Court was satisfied with Wilshire Law Firm's experience and qualifications when it granted final approval in *Moreno v. Pretium Packaging, L.L.C.,* No. 8:19-cv-02500-SB-DFM, *3 (C.D. Cal. Aug. 6, 2021).

### 8.    Class Settlement Is Superior to Other Available Means of Resolution

Resolving all Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrates the advantages of a collective bargaining and resolution process. Addressing the allegations through a class action is superior to individual litigation or any alternative methods that may exist. This action was filed precisely because Plaintiffs believed those alternatives would have proven ineffective in addressing the problem on a class-wide basis.

Additionally, although the value of the claims is not insignificant, the amount in controversy is not nearly enough to incentivize individual action. *See Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class certification."). As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Settlement Class proposed by the Parties is appropriate.

### E.    The Proposed Class Notice Adequately Informs Class Members About the Case And Proposed Settlement

The proposed class settlement notice and claims administration procedure satisfy due process. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to

83784228v.1

direct the litigants to provide Class Members with the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732, 746 (1974). Under Rule 23(c)(2), notice by mail provides such "individual notice to all members." *Id.* Where the names and addresses are easily ascertainable, individual notice through the mail constitutes the "best notice practicable." *Id.* at 175.

The Notice of Class Action Settlement ("Class Notice") was jointly drafted and approved by the Parties and provides Class Members with all required information so that each member may make an informed decision regarding his or her participation in the Settlement. The Class Notice provides information regarding the nature of the lawsuits; a summary of the substance of the settlement terms; the class definition; the deadlines by which Class Members must submit Request for Exclusions or objections; the date for the final approval hearing; the formula used to calculate settlement payments; a statement that the Court has preliminarily approved the settlement; and a statement that Class Members will release the settled claims unless they opt out. Accordingly, the Notice satisfies the requirements of Rule 23(c)(2).

## F. The Proposed Class Action Settlement Should Receive Preliminary Approval

Class action settlements must be approved by the court and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class action settlements involves three steps:

> 1. Preliminary approval of the proposed settlement; 2. Notice to the class providing them an opportunity to exclude themselves; and 3. A final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement.

*See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

F.R.C.P. 23(e) provides that if the proposal would bind class members, the Court

may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D)      the proposal treats class members equitably relative to each other.

The judicial policy favoring settlement of class action suits should guide the Court in evaluating the fairness of a settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d at 1027 (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). As this Circuit has observed, "settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

### G.     The Relief Provided by the Settlement is Fair and Reasonable

At the preliminary approval stage, the Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See generally* 3 Conte & Newberg, *Newberg on Class Actions*, § 7.20 (4th ed. 2002). For preliminary approval, scrutiny of the settlement is reduced. *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered."); *see also, Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 (S.D. Cal. Aug. 4, 2016).

The Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the

1    notice to the class and the scheduling of the formal fairness hearing is appropriate.

2    Newberg, § 11:25. Preliminary approval should be granted if "the proposed settlement

3    appears to be the product of serious, informed, non-collusive negotiations, has no obvious

4    deficiencies, does not improperly grant preferential treatment to class representatives or

5    segments of the class, and falls within the range of possible approval. *Ruch v. AM Retail*

6    *Group, Inc.*, 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) (quoting *In re Tableware*

7    *Antitrust Litig.*, 484. F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

### 1.    The Gross Settlement Amount is Within the Range of Reasonableness

10    As discussed in detail below, an objective evaluation of the Settlement confirms

11    that the relief negotiated on the Class's behalf—a $500,000 non-reversionary total Gross

12    Settlement Amount—is fair, reasonable, and valuable. The Settlement was negotiated by

13    the Parties at arm's length with helpful guidance from Mr. Marlin, and the Settlement

14    confers substantial benefits to Class Members. The relief offered by the Settlement is

15    particularly impressive when viewed against the difficulties encountered by plaintiffs

16    pursuing wage and hour cases.

17    In determining whether a settlement agreement is fair, adequate, and reasonable to

18    all concerned, the Court may consider the strength of the plaintiff's case and the amount

19    offered in settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d

20    1234, 1242 (9th Cir. 1998). Ultimately, "the district court's determination is nothing more

21    than an amalgam of delicate balancing, gross approximations, and rough justice," and

22    there is no single "formula" to be applied; rather, the Court may presume that the parties'

23    counsel and the mediator arrived at a reasonable range of settlement by considering

24    Plaintiffs' likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

25    625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

83784228v.1

| Plaintiffs' Calculations of Defendant's Theoretical Estimated Exposure | |
| --- | --- |
| Regular Rate Claim[7] | $6,000.00 |
| Rest Period Claim[8] | $10,648,225.00 |
| Meal Period Claim[9] | $4,259,290.00 |
| Business Expense Claim[10] | $182,000.00 |
| Rounding / Off-the-Clock[11] | $1,271,810.00 |
| Wage Statement Claim[12] | $2,200,000.00 |
| Final Pay Claim[13] | $2,266,320.00 |
| **Total** | **$20,833,645.00** |

[7] Plaintiffs' expert found that 10% of Class Members in a sample received overtime in the same pay period that they received bonus payments. Assuming a regular rate violation in each of those pay periods, Plaintiffs conservatively estimate that these Class Members were each underpaid $30 in overtime during the Class Period. Based thereon, Defendant's exposure would be calculated as follows: 2,000 Class Members × 10% × $30 per class member = $6,000.00

[8] Plaintiffs allege that employees were not permitted to leave the worksite during their rest periods. Conservatively assuming that at least 50% of the Settlement Class would have left the worksite if allowed, Defendant's exposure would be: ≈ 1,071,250 rest-period eligible shifts × 50% × $19.88 average hourly wage = $10,648,225.

[9] Plaintiffs allege that Pactiv failed to provide second meal periods when employees worked more than 10 hours. Plaintiffs estimated Defendant's exposure as follows: ≈ 1,071,250 meal-period eligible shifts × 20% with second-meal period violations × $19.88 average hourly wage = $4,259,290.

[10] Plaintiffs allege that Pactiv failed to reimburse its employees for steel-toed boots required for work, and for the cost of mileage to use personal vehicles to travel to and from employer-mandated drug tests and physical examinations. Pactiv's exposure for this claim was estimated as follows: (2,000 Class Members × $80 boots) + (2,000 × 20 miles × $0.55) = $182,000.

[11] In total, Plaintiffs estimate that Class Members lost 63,974.3 hours due to Pactiv's allegedly unlawful time rounding and/or discounting hours worked prior to an employee's scheduled start time. Based thereon, Defendant's exposure for this claim would be calculated as follows: 63,974.3 hours × $19.88/hour ≈ $1,271,810.

[12] Based on the foregoing allegations, Plaintiffs allege that Defendant failed to issue Class Members accurately itemized wage statements, with exposure for the claim calculated as follows: 1,100 Class Members employed during the 1-year wage statute of limitations period × $4,000 maximum penalty = $4,400,000. However, because this claim is only as strong as the underlying predicate claims, Plaintiffs reduced the value of this claim by 50%, or to $2,200,000.

[13] Plaintiffs' off-the-clock claims trigger derivative waiting time penalties at the rate of 30 days' wages for each former class member. Based thereon, Plaintiffs estimate Defendant's exposure as follows: 950 former employees × 30 days wages × 8 hours × $19.88 = $4,532,640. However, while Section 203 penalties are relatively straightforward to calculate, the analysis becomes more difficult for settlement purposes as derivative waiting-time penalties are only as strong as the underlying predicate claims, and are subject to good faith defenses. For example, defendants commonly argue that no waiting-time penalties can be awarded unless the failure to pay wages is "willful," an element that Plaintiffs acknowledge would have been difficult to prove. *See* Cal. Code Regs. tit. 8, § 13520 ("[a] willful failure to pay wages within the meaning of Labor Code section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages were due."). Plaintiffs accordingly discounted the value of this claim by 50%, or to $2,266,320.

This estimate assumes that each and every one of Plaintiffs' claims would have been certified for class-wide resolution, that Plaintiffs' would have prevailed at trial, and that the jury's verdict would have been affirmed on appeal. Understandably, for purposes of evaluating the settlement's reasonableness, this estimate must be "tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014).

Ultimately, Plaintiffs' Counsel determined an appropriate range of recovery for settlement purposes by offsetting Defendant's maximum theoretical liability by: (i) the strength of the defenses to the merits of Plaintiffs' claims; (ii) the risk of class certification being denied, a risk that materialized in the Wilson Action; (iii) the risk of losing on any of a number of dispositive motions that could have been brought between certification and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine) that might have eliminated all or some of Plaintiffs' claims, or barred evidence/testimony in support of the claims; (iv) the risk of losing at trial; (v) the chances of a favorable verdict being reversed on appeal; and (vi) the difficulties attendant to collecting on a judgment.

Given the preceding risks of continued litigation, Plaintiffs believe that a $500,000 settlement is fair and reasonable, and courts routinely approve settlements that provide a similar discounted range of the maximum potential recovery.[14]

## 2. The Settlement Provides for an Equitable Method of Allocating Relief to Class Members

The Settlement provides for an equitable method of allocating relief to Class

---

[14] *See, e.g., In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total estimated damages); *In re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *In re LDK Solar Sec. Litig.,* No. 07-cv-05182-WHA, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approving where "[t]he proposed settlement amount is [. . .] only about five percent of the estimated damages before fee and costs— even before any reduction thereof for attorney's fees and costs.").

83784228v.1

Members. Each Class Member's respective share of the Net Settlement Fund will be allocated on a pro-rata basis according to the number of Pay Periods worked by each qualifying Class Member during the Class Period. Individual Settlement Payments will be reduced by any required deductions for each Participating Class Members as specifically set forth herein, including employee-side tax withholdings or deductions. The average payment from the Net Settlement Fund is approximately $100. This is in line with many wage and hour class action settlements approved by California state and federal courts.[15]

### 3. The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and Costs

At final approval, Plaintiffs' Counsel will request attorneys' fees in the amount of one-third of the total common fund. Under controlling California law,[16] the common fund method for awarding attorneys' fees is appropriate where, as here, attorneys have been instrumental in creating a settlement fund that benefits all class members.[17] Although California has no benchmark, California courts routinely award attorneys' fees equalling

---

[15] *See*, *e.g.*, *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

[16] In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Because CAFA operates to modify the diversity requirement, "the *Erie* doctrine still applies so that state substantive law governs such claims in federal court." *See* Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California & 9th Cir. Editions (The Rutter Group, 2015) paragraph 10:497.5.

[17] *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long recognized that when attorneys create a common fund that benefits a class, the attorneys have an equitable right to be compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48 (2000) ("Courts agree that, because the percentage-of-the-benefit approach is 'results oriented rather than process-oriented,' it better approximates the workings of the marketplace' than the lodestar approach." [citation omitted]).

83784228v.1

approximately one-third of the common fund's total potential value or higher. *Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 545 (2021) ("fee awards in class actions average around one-third of the recovery regardless of whether the percentage method or the lodestar method is used.") (internal quotations omitted). Consistent with that observation, California state and federal courts routinely award attorneys' fees equaling one-third of the common fund. *See, e.g. Laffitte v. Robert Half Internat. Inc.*, 231 Cal. App. 4th 860, 871 (2016) ("33 1/3 percent of the common fund is consistent with, and in the range of, awards in other class action lawsuits").

Plaintiffs will file a formal motion for the negotiated attorneys' fees and costs once preliminary approval of the Settlement is granted.

### H.    There Are No Obvious Deficiencies with the Settlement or Preferential Treatment to Certain Class Members

The Court must also ask whether "the Settlement contains any obvious deficiencies" and "whether the Settlement provides preferential treatment to any Class Member." *Volkswagen*, 2016 WL 4010049, at \*\*14, 16. This Settlement contains no "glaring deficiencies" *Id.* at \*14. The Settlement does not provide for a reversion of unpaid settlement funds to Defendants or distribute a disproportionate share of the settlement to the attorneys that requires closer scrutiny in the Ninth Circuit. *See id.* at \*14-15 (applying the factors set forth in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

Moreover, no segment of the Class is given preferential treatment. Plaintiffs will also seek, at a later time (when the Motion for Attorneys' Fees is filed), incentive awards in amounts that are well within the range of such awards in the Ninth Circuit for their work on the behalf of the Class, the reputation risk undertaken, and for the execution of a general release. *See infra,* § III.G. *See, e.g.*, *La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014 WL 2967475, \*8 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff for services to the Class, reputational harm and general release). Accordingly, the Settlement is procedurally fair, adequate and reasonable.

83784228v.1

**I.     The Consideration Provided for the PAGA Claim Is Fair and
Reasonable In Light of the Amount in Controversy Discounted by the
Risks of Continued Litigation**

Pursuant to the Settlement Agreement, $40,000 from the Gross Settlement Amount shall be allocated to the resolution of the PAGA claim, of which 75% ($30,000) will be paid directly to the LWDA, and the remaining 25% ($10,000) will be paid to PAGA Members. (Settlement Agreement ¶ 36.)

This result was reached after good-faith negotiation between the parties. The amount was valued as follows: Based on information and evidence produced by Defendant during discovery, Plaintiffs' Counsel determined that aggrieved employees worked a combined total of approximately 115,000 pay periods during the PAGA statute of limitations period ("PAGA Period"). Although PAGA provides for a $200 penalty for "subsequent" violations,[18] a number of courts have found that the "subsequent" penalty under PAGA applies only after a <u>court</u> or the <u>Labor Commissioner</u> determines that the employer has violated the Labor Code. *See Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157, 1173 (9th Cir. 2021) (reversing judgment as to "heightened civil penalties" because the defendant was not given notice by the Labor Commissioner when the "subsequent" violations occurred). Under this line of cases, Defendant's exposure would be approximately $11.5 million = 115,000 violative pay periods × $100.

It should be noted that PAGA gives the Court wide latitude to reduce the amount of civil penalties "based on the facts and circumstances of a particular case" when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h). In reducing PAGA penalties, courts have considered issues including whether the employees suffered actual injury from the

---

[18] , PAGA civil penalties for Labor Code violations are calculated according to Labor Code 2699(f)(2): If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation (the "subsequent violation penalty").

violations, whether the defendant was aware of the violations, and the employer's willingness to fix the violation. *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528 (2018) (awarding PAGA penalties of only 0.2% of the maximum).

For example, during the penalty phase of trial in *Carrington*, the plaintiff requested PAGA penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000—**or 0.21% of the maximum**—and stated that this reduction was warranted because imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with meal period obligations and because the court found the violations were minimal. *Carrington*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed the lower court's reduced award of a $150,000 penalty under PAGA. *Id.* at 529. If a similar reduction had been applied here, Plaintiffs would have recovered only approximately $24,150 ($11.5 million × 0.0021 reduction).

Plaintiffs therefore determined an appropriate range of settlement for PAGA penalties as a percentage of the settlement range that was consistent with other hybrid class/PAGA settlements approved by California courts.[19] Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009); *see, e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

---

[19] *See Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473 at *3 (E.D. Cal. June 29, 2016) (preliminarily approving $1.95 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575 at *7 (E.D. Cal. Oct. 31, 2012) (approving $3.7 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP, 2011 WL 672645 at *1 (N.D. Cal Feb. 16, 2011) (approving $6.9 million settlement containing $10,000 PAGA penalties with $7,500 paid to LWDA).

83784228v.1

## IV.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of claims. Having appropriately presented the materials and information necessary for preliminarily approval, the Parties request that the Court preliminarily approve the settlement.

Dated: May 23, 2022                    Respectfully submitted,

                                       By: /s/ Brandon Brouillette
                                       Mark A. Ozzello
                                       Brandon Brouillette
                                       Joseph Hakakian
                                       **CAPSTONE LAW APC**
                                       Attorneys for Plaintiff Mark Wilson


                                       By: /s/ Christina M. Le
                                       Justin F. Marquez
                                       Christina M. Le
                                       **WILSHIRE LAW FIRM, PLC**
                                       Attorneys for Plaintiff Jack Rodriguez

83784228v.1