Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Mark A. Ozzello (SBN 116595)
Mark.Ozzello@capstonelawyers.com
Brandon Brouillette (SBN 273156)
Brandon.Brouillette@capstonelawyers.com
Joseph Hakakian (SBN 323011)
Joseph.Hakakian@capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:     (310) 556-4811
Facsimile:     (310) 943-0396

Attorneys for Plaintiff Mark Wilson

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK WILSON, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PACTIV LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:20-cv-01691-SB-KK<br><br>Assigned to: Hon. Stanley Blumenfeld, Jr.<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     November 8, 2022<br>Time:     8:30 a.m.<br>Place:     Department 6C |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 8, 2022 at 8:30 a.m., or as soon thereafter as counsel may be heard, in Department 6C of the above-captioned court, located at 350 West 1st Street, Los Angeles, California 90012, the Honorable Stanley Blumenfeld Jr. presiding, Plaintiffs Mark Wilson and Jack Rodriguez will, and hereby do, move this Court for entry of an order and judgment granting final approval of the class action settlement and all agreed-upon terms therein. This Motion, unopposed by Defendant Pactiv LLC, seeks final approval of: (1) the Joint Stipulation of Class Action Settlement and Release, (2) settlement payments to Participating Class Members and the LWDA, and (3) costs/expenses to the settlement administrator, CPT Group, Inc.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the previously filed Motion for Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement Payments; (4) the Declaration of Raul Perez; (5) the Declaration of Justin F. Marquez; (6) the Declaration of Jeremy Romero on behalf of CPT Group, Inc. Group, Inc., the settlement administrator; (7) the [Proposed] Order and Judgment Granting Final Approval of Class Action Settlement; (8) the records, pleadings, and papers filed in this action; and (9) upon such other documentary and/or oral evidence as may be presented to the Court at the hearing.

Dated: October 7, 2022                    Respectfully submitted,

By: /s/ Brandon Brouillette
    Raul Perez
    Mark A. Ozzello
    Brandon Brouillette
    Joseph Hakakian
    **CAPSTONE LAW APC**
    Attorneys for Plaintiff Mark Wilson

By: /s/ Christina M. Le
    Justin F. Marquez
    Christina M. Le
    **WILSHIRE LAW FIRM, PLC**
    Attorneys for Plaintiff Jack Rodriguez

# TABLE OF CONTENTS

I.    INTRODUCTION....................................................................................................1

II.   FACTS AND PROCEDURE...................................................................................3

   A.   *Wilson v. Pactiv LLC*, No. 5:20-cv-01691-SB-KK (C.D. Cal.) ........................3

   B.   *Jack Rodriguez v. Pactiv LLC*, No. 5:21-cv-00841-SB-KK (C.D. Cal.)...........4

   C.   The Parties Settled After Mediation .................................................................4

   D.   The Proposed Settlement Fully Resolves Plaintiffs' Claims ............................4

         1.   Composition of the Settlement Class.......................................................4

         2.   Settlement Consideration........................................................................5

         3.   Formula for Calculating Payments from the Net Settlement Fund
               and PAGA Fund ......................................................................................5

         4.   Release by the Settlement Class and PAGA Members .............................5

   E.   The Notice and Settlement Administration Processes Were Completed
         Pursuant to the Court's Order .........................................................................5

III.  ARGUMENT.........................................................................................................6

   A.   Class Certification Requirements Are Met........................................................6

   B.   The Court Should Grant Final Approval of the Class Settlement .....................7

         1.   Plaintiffs' Counsel Conducted a Thorough Investigation of the
               Factual and Legal Issues and Were Thus Able to Objectively
               Assess the Settlement's Reasonableness...................................................9

         2.   The Settlement Was Reached Through Arm's-Length Bargaining
               in Which All Parties Were Represented by Experienced Counsel............9

         3.   The Proposed Settlement Is Reasonable Given the Strengths of
               Plaintiffs' Claims and the Risks and Expense of Continued
               Litigation ..............................................................................................10

         4.   The Settlement Class Has Responded Positively to the Settlement ........13

   C.   The Court Should Approve the PAGA Settlement...........................................14

1       D.   The Requested Payment to the Settlement Administrator Is Reasonable

2          and Should Receive Final Approval ...................................................................16

3  IV.  CONCLUSION.................................................................................................16

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ..................................................................8

*Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157 (9th Cir. 2021).............................................15

*Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) ...............................7

*Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP, 2011 WL 672645
    (N.D. Cal Feb. 16, 2011)..............................................................................................16

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010)...................13

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ......................................7

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)..............................................10

*Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473
    (E.D. Cal. June 29, 2016)..............................................................................................16

*Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011
    WL 7563047 (C.D. Cal. Aug. 12, 2011) ......................................................................15

*Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL
    5364575 (E.D. Cal. Oct. 31, 2012)...............................................................................16

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .............................................................13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).............................................7, 14

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133
    (N.D. Cal. Apr. 3, 2009)................................................................................................16

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),
    2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ..............................................................10

*In re Armored Car Antitrust Litig.*, 472 F. Supp. 1357 (N.D. Ga. 1979) .......................13

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .........................9

*In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770
    (N.D. Cal. July 22, 2019) ...............................................................................................8

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ...............................7

*In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) .........................................................12

*In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231 (D. Del. 2002)...............................13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998)........................................11

*National Rural Tele. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004)...............................................................................................................................13

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .......................11

*Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc.*, 303 F.R.D. 337 (E.D. Cal. 2014)............................................................................................10

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009)............................................11

*Villegas v. J.P. Morgan Chase & Co.*, No. 09–00261, 2012 WL 5878390 (N.D. Cal. Nov.21, 2012).................................................................................10

**STATE CASES**

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ...........................................15

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576  (2010)....................................................16

*State v. Levi Strauss & Co.*, 41 Cal. 3d 460 (1986) ..................................................9

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(a) .........................................................................................................6

Fed. R. Civ. P. 23(b)(3) ....................................................................................................6

**STATE STATUTES**

8 Cal. Code Regs. § 13520 ..............................................................................................12

Cal. Lab. Code § 204 .......................................................................................................3, 4

Cal. Lab. Code § 2699(h)................................................................................................15

Cal. Lab. Code §§2698, *et seq.* (Private Attorneys General Act) ......................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On July 1, 2022, this Court granted preliminary approval of the Joint Stipulation of Class Action Settlement and Release[1] and approved distribution of the Notice of Class Action Settlement to all Class Members. Class Members were given 45 days to opt out or object to the Settlement ("Response Deadline"). Now that the Response Deadline has passed, Plaintiffs Mark Wilson and Jack Rodriguez are pleased to report that: (1) only 4 individuals opted out of the Settlement Class (4 out of 2,028 or 0.2%); (2) no Class Members objected to the Settlement; (3) the **entire Net Settlement Amount will be disbursed to all 2,024 Participating Class Members**; (4) the average payment to Participating Class Members from the Net Settlement Fund is approximately $100, and the highest is approximately $225. (Declaration of Jeremy Romero ["Romero Decl."] ¶¶ 6-8.)

Plaintiffs now move for final approval of the class action settlement. This motion is unopposed by Defendant Pactiv LLC (collectively with Plaintiffs, the "Parties"). The principal terms of the Settlement provide for the following:

(1)   Conditional certification of a Settlement Class defined as: All persons who are employed or have been employed by Defendant in California as hourly-paid or non-exempt employees at any time during the time period from May 29, 2016 to July 1, 2022 ("Class Members").

(2)   A **non-reversionary** Gross Settlement Amount of $500,000. The Gross Settlement Amount includes:

(a)   A Net Settlement Fund (the Gross Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, the PAGA Settlement Amount, and the Class Representative

---

[1] Hereinafter, the "Settlement" or "Settlement Agreement."  Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement.

Enhancement Payments), which will be allocated to all Class Members on a pro-rata basis according to the number of pay periods each Class Member worked during the Class Period. **The Entire Net Settlement Fund will be paid to all Participating Class Members.**

(b)    Attorneys' fees in the amount of one-third of the Gross Settlement Amount (or $166,667), and litigation costs and expenses not to exceed $50,000, to Capstone Law APC and Wilshire Law Firm, PLC ("Plaintiffs' Counsel").

(c)    Settlement administration costs of $19,000, to be paid to the jointly selected Settlement Administrator, CPT Group, Inc. ("CPT").

(d)    A $40,000 PAGA settlement, of which 75% ($30,000) will be paid to the Labor & Workforce Development Agency ("LWDA"), and the remaining 25% ($10,000) ("PAGA Fund"), will be payable to PAGA Members, defined as: All persons who are employed or have been employed by Defendant in California as hourly-paid or non-exempt employees at any time during the time period from May 29, 2019 to July 1, 2022. **The Entire PAGA Fund will be paid to all PAGA Members.**

(e)    Class Representative Enhancement Payments of $10,000, each, to Mark Wilson and Jack Rodriguez for their service on behalf of the Settlement Class, the risks they took in bringing the action on behalf of the class, and for general releases of all claims arising out of their employment with Defendant.

An objective evaluation of the Settlement confirms that the relief negotiated on the Settlement Class's behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Louis Marlin, an experienced and well-respected class action mediator, and the Settlement confers

substantial benefits to Class Members. This relief—averaging approximately $100 per Class Member from the Net Settlement Fund—is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases. Moreover, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risks of continued litigation.

Accordingly, given the Settlement's favorable terms, the Court's previous findings concerning the Settlement's fairness and reasonableness, and the complete absence of objection to the Settlement, Plaintiffs respectfully request that the Court: (1) grant this Motion for Final Approval of the Settlement Agreement; (2) grant final approval of the settlement administration costs/expenses; (3) enter judgment pursuant to the Settlement Agreement; and (4) retain jurisdiction to enforce the Settlement.

## II.     FACTS AND PROCEDURE

### A.     *Wilson v. Pactiv LLC*, No. 5:20-cv-01691-SB-KK (C.D. Cal.)

Pactiv employed Plaintiff Mark Wilson as a non-exempt, hourly paid employee from August 2017 through March 19, 2020. (Dkt. No. 23; First Amended Complaint ["FAC"] ¶ 5.) He worked as a Lift Truck Operator at Pactiv's warehouse location in San Bernardino, California, where he unloaded and loaded trailers, organized produce in the warehouse, and formed and packaged pallets for shipment. (*Id.*)

On May 29, 2020, Plaintiff Wilson filed this action in the Superior Court of California for the County of San Bernardino. (Dkt. No. 1-Ex. A.) On August 21, 2020, Defendant removed the action to this Court. (Dkt. No. 1.)

On April 28, 2021, Plaintiff amended his complaint to include a claim under the Private Attorneys General Act, Labor Code §§2698, *et seq*. (Dkt. No. 23.) On August 6, 2021, Plaintiff filed his motion for class certification. (Dkt. No. 31.) On December 3, 2021, the Court denied the motion. (Dkt. No. 46.) Following the denial of the motion, Plaintiff resumed litigation as to his claim for PAGA civil penalties.

B.    ***Jack Rodriguez v. Pactiv LLC***, No. 5:21-cv-00841-SB-KK (C.D. Cal.)

Pactiv employed Plaintiff Jack Rodriguez as a non-exempt, hourly paid employee from August 24, 2017 through February 27, 2020. (Dkt. No. 5 – Ex. A.) Like Plaintiff Wilson, Plaintiff Rodriguez also worked as a Lift Truck Operator at Pactiv's warehouse location in San Bernardino, sharing the same duties as Plaintiff Wilson, while working the swing shift (1:00 pm to 9:30 pm). (*Id.*)

On February 22, 2021, Plaintiff Rodriguez filed this action in the Superior Court of California for the County of San Bernardino, alleging violations of the following Labor Code and Business and Professions Code sections: (1) 204, 1194, 1194.2, and 1197 (failure to pay minimum and straight time wages), (2) 1194 and 1198 (failure to pay overtime wages), (3) 226.7, 512 (failure to provide meal periods), (4) 226.7 (failure to provide rest periods), (5) 201-203 (failure to timely pay final wages at termination), (6) 226 (failure to provide accurate itemized wage statements); and (7) Cal. Bus. & Prof. Code §§ 17200, *et seq.* (unlawful and unfair business practices). (*Id.*)

On May 12, 2021, Defendant removed the action to this Court. (Dkt. No. 1.)

C.    **The Parties Settled After Mediation**

On April 7, 2022, the Parties participated in full-day mediation with Mr. Marlin, an experienced mediator of wage and hour class and representative actions. Mr. Marlin helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. With Mr. Marlin's guidance, the Parties were eventually able to negotiate a complete settlement of Plaintiffs' claims. The terms of the settlement are now set forth in complete and final form in the Settlement. (Perez Decl. ¶ 4.) At all times, the Parties' negotiations were adversarial and non-collusive.

D.    **The Proposed Settlement Fully Resolves Plaintiffs' Claims**

1.    **Composition of the Settlement Class**

The proposed Settlement Class consists of all persons who are employed or have been employed by Defendant in California as hourly-paid or non-exempt employees at any time during the time period from May 29, 2016 to July 1, 2022. (Settlement

1    Agreement ¶ 5.)

2              **2.    Settlement Consideration**

3         Plaintiffs and Defendant have agreed to settle the underlying class claims in

4    exchange for the Gross Settlement Amount of $500,000. The Gross Settlement Amount

5    includes: (1) automatic payments to all Participating Class Members—meaning, all

6    Class Members except those who submit timely and valid Requests for Exclusion—

7    from the Net Settlement Fund; (2) $166,667 in attorneys' fees (i.e., one-third of the

8    common fund) and up to $50,000 in litigation costs to Plaintiffs' Counsel; (3) Settlement

9    Administration Costs of $19,000; (4) a $30,000 payment to the LWDA and a $10,000

10   payment to PAGA Members; and (5) Class Representative Enhancement Payments of

11   $10,000, each, for Plaintiffs' service on behalf of the Settlement Class, the risks they

12   took in bringing their representative claims, and for general releases of all claims arising

13   out of their employment with Defendant. (Settlement Agreement ¶¶ 32-36.)

14              **3.    Formula for Calculating Payments from the Net Settlement**

15                     **Fund and PAGA Fund**

16        Payments to Class Members from the Net Settlement Fund, and payments to

17   PAGA Members from the PAGA Fund, will be in proportion to the number of Pay

18   Periods during which Class Members and PAGA Members worked during the

19   applicable Class Period and PAGA Period. (Settlement Agreement ¶ 40.)

20              **4.    Release by the Settlement Class and PAGA Members**

21        In exchange for the Gross Settlement Amount, Plaintiffs and Participating Class

22   Members will agree to release the Released Class Claims during the Class Period.

23   (Settlement Agreement ¶¶ 25, 50.) And in exchange for the PAGA Settlement Amount,

24   Plaintiffs and PAGA Members will agree to release the Released PAGA Claims during

25   the PAGA Period. (Settlement Agreement ¶¶ 26, 51.)

26   **E.    The Notice and Settlement Administration Processes Were**

27         **Completed Pursuant to the Court's Order**

28        As authorized by the Court's Order preliminarily approving the Settlement

1    Agreement, the Parties engaged CPT to provide settlement administration services.

2    (Romero Decl. ¶ 2.) CPT's duties have, and if the Court enters the final approval order,

3    will include: (1) printing and mailing the Notice of Class Action Settlement ("Notice");

4    (2) receiving and processing undeliverable Notices and locating updated addresses for

5    Class Members; (3) receiving and validating Requests for Exclusion; (4) calculating and

6    distributing the Class Settlement Amount; (5) tax reporting; (6) providing necessary

7    reports and declarations; and (7) performing such other tasks as set forth in the

8    Settlement Agreement or as the Parties mutually agree or that the Court orders. (*Id.*)

9         On July 6, 2022, CPT received the Class Notice prepared jointly by Plaintiffs'

10   Counsel and counsel for Defendant and approved by the Court. (Romero Decl. ¶ 3.) The

11   Class Notice summarized the Settlement's principal terms, provided Class Members

12   with an estimate of how much they would be paid if the Settlement received final

13   approval, and advised Class Members about how to opt out of the Settlement and how to

14   object. (*Id.*)

15        Separately, counsel for Defendant provided CPT with a mailing list (the "Class

16   List"), which included each Class Member's full name, last known address, Social

17   Security Numbers, and information necessary to calculate payments. (*Id.*) The mailing

18   addresses contained in the Class List were processed and updated using the National

19   Change of Address Database maintained by the U.S. Postal Service. (*Id.* at ¶ 4.)

20        On August 4, 2022, CPT mailed Class Notices to Class Members via First-Class

21   U.S. mail. (*Id.*) Class Members were given 45 days to opt out or object to the Settlement.

22   Plaintiffs are pleased to report that only 4 individuals opted out of the Settlement Class,

23   and no Class Members objected to the Settlement. (*Id.* at ¶¶ 6-7.)

24   **III.   ARGUMENT**

25        **A.   Class Certification Requirements Are Met**

26        The Court certified the Class for settlement purposes upon Preliminary Approval,

27   finding that requirements under Rule 23(a) and Rule 23(b)(2) were satisfied. (*See* Dkt.

28   No. 69.) Nothing has changed that would affect the Court's ruling on class certification.

*See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (reconfirming the certification set forth in the preliminary approval order "[b]ecause the circumstances have not changed" since that order); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (courts must apply the criteria for class certification "differently in litigation classes and settlement classes"). Therefore, the Court should grant final certification of the Settlement Class.

### B.    The Court Should Grant Final Approval of the Class Settlement

Upon final approval, the Court's duty is to determine whether the proposed Settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In evaluating the Settlement, the Court is guided by several important policies. First, federal courts favor settlements, particularly in class actions, where the costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong policy that favors settlements, particularly where complex class action litigation is concerned"). Second, for settlements reached through arms'-length negotiations, courts are to give:

> [P]roper deference to the private consensual decision of the parties. . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027.

Guided by these policies, the district court then may consider some or all of the following factors in evaluating the reasonableness of a settlement: (1) the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of proceedings; (5) the participation of a governmental participant; (6) the experience and views of counsel; and (7) the reaction of class members. *See Hanlon*, 150 F.3d at 1026 ("*Hanlon* factors").

The amendments to Rule 23 direct the Court to consider a similar list of factors, including whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. FED. R. CIV. P. 23(e)(2). The Advisory Committee's notes clarify that this list of factors does not "displace" the *Hanlon* factors, "but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (quoting FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment).

Additionally, for class action settlements prior to contested certification, the Ninth Circuit further requires that the Court scrutinize the settlement even more closely, applying the so-called *Bluetooth* factors.[2] *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). As set forth below, the Settlement satisfies all of these factors, meriting final approval.

By granting preliminary approval, this Court has already determined that the Settlement Agreement is fair and reasonable, subject to objections. With no objections to the Settlement, the Court's preliminary assessment has been separately endorsed by the Settlement Class. Accordingly, for these and the reasons discussed in more detail below, the Court should grant final approval.

---

[2] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011).

1.    **Plaintiffs' Counsel Conducted a Thorough Investigation of the**
**Factual and Legal Issues and Were Thus Able to Objectively**
**Assess the Settlement's Reasonableness**

Plaintiffs' Counsel thoroughly engaged in the discovery process and made use of documents and data produced by Defendant (including Class Members' payroll records and Defendant's written labor policies manuals), information provided by Class Member declarants and interviewees, and deposition testimony (from over 30 depositions) to assess Defendant's potential exposure as to Plaintiffs' claims. (*See* Perez Decl. ¶¶ 5-12; Marquez Decl. ¶¶ 12-15.) By engaging in such a thorough investigation and evaluation of Plaintiffs' claims, Plaintiffs' Counsel can opine that the Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is fair, reasonable, adequate, and is in the best interests of Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation. (*Id.*)

2.    **The Settlement Was Reached Through Arm's-Length**
**Bargaining in Which All Parties Were Represented by**
**Experienced Counsel**

"[W]hat transpires in settlement negotiations is highly relevant to the assessment of a proposed settlement's fairness." *State v. Levi Strauss & Co.*, 41 Cal. 3d 460, 482 (1986). Courts presume the absence of fraud or collusion in the negotiation of a settlement, unless evidence to the contrary is offered; thus, there is a presumption that settlement negotiations are conducted in good faith. Newberg, § 11.51.

As explained above, the Parties participated in a mediation with Mr. Louis Marlin, Esq., an experienced mediator of wage and hour class actions. Mr. Marlin helped manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (the presence of a neutral mediator is a factor weighing in favor of finding of no collusion); *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF

(HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."); *Villegas v. J.P. Morgan Chase & Co.*, No. 09–00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (participation in mediation "tends to support the conclusion that the settlement process was not collusive"); *Ogbuehi v. Comcast of California/Colorado/Fla./Oregon, Inc.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014) (accord). At all times, the Parties' negotiations were adversarial and non-collusive. (Perez Decl. ¶ 4.)

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. Plaintiffs are represented by Capstone Law APC and Wilshire Law Firm, PLC. Plaintiffs' Counsel employ seasoned class action attorneys who regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions. (Perez Decl. ¶¶ 13-21, Ex. 1; Marquez Decl. ¶¶ 43-51.)

Defendant is represented by Seyfarth Shaw LLP, a respected defense firm.

### 3. The Proposed Settlement Is Reasonable Given the Strengths of Plaintiffs' Claims and the Risks and Expense of Continued Litigation

As discussed in detail below, an objective evaluation of the Settlement confirms that the relief negotiated on the Class's behalf—a $500,000 non-reversionary total Gross Settlement Amount—is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Mr. Marlin, and the Settlement confers substantial benefits to Class Members. The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases.

In determining whether a settlement agreement is fair, adequate, and reasonable

to all concerned, the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

| Plaintiffs' Calculations of Defendant's Theoretical Estimated Exposure | |
| --- | --- |
| Regular Rate Claim[3] | $6,000.00 |
| Rest Period Claim[4] | $10,648,225.00 |
| Meal Period Claim[5] | $4,259,290.00 |
| Business Expense Claim[6] | $182,000.00 |
| Rounding / Off-the-Clock[7] | $1,271,810.00 |
| Wage Statement Claim[8] | $2,200,000.00 |

[3] Plaintiffs' expert found that 10% of Class Members in a sample received overtime in the same pay period that they received bonus payments. Assuming a regular rate violation in each of those pay periods, Plaintiffs conservatively estimate that these Class Members were each underpaid $30 in overtime during the Class Period. Based thereon, Defendant's exposure would be calculated as follows: 2,000 Class Members × 10% × $30 per class member = $6,000.00

[4] Plaintiffs allege that employees were not permitted to leave the worksite during their rest periods. Conservatively assuming that at least 50% of the Settlement Class would have left the worksite if allowed, Defendant's exposure would be: ≈ 1,071,250 rest-period eligible shifts × 50% × $19.88 average hourly wage = $10,648,225.

[5] Plaintiffs allege that Pactiv failed to provide second meal periods when employees worked more than 10 hours. Plaintiffs estimated Defendant's exposure as follows: ≈ 1,071,250 meal-period eligible shifts × 20% with second-meal period violations × $19.88 average hourly wage = $4,259,290.

[6] Plaintiffs allege that Pactiv failed to reimburse its employees for steel-toed boots required for work, and for the cost of mileage to use personal vehicles to travel to and from employer-mandated drug tests and physical examinations. Pactiv's exposure for this claim was estimated as follows: (2,000 Class Members × $80 boots) + (2,000 × 20 miles × $0.55) = $182,000.

[7] In total, Plaintiffs estimate that Class Members lost 63,974.3 hours due to Pactiv's allegedly unlawful time rounding and/or discounting hours worked prior to an employee's scheduled start time. Based thereon, Defendant's exposure for this claim would be calculated as follows: 63,974.3 hours × $19.88/hour ≈ $1,271,810.

[8] Based on the foregoing allegations, Plaintiffs allege that Defendant failed to issue Class Members accurately itemized wage statements, with exposure for the claim

| Plaintiffs' Calculations of Defendant's Theoretical Estimated Exposure | |
|---|---|
| Final Pay Claim[9] | $2,266,320.00 |
| **Total** | **$20,833,645.00** |

These estimates assume that each and every one of Plaintiffs' claims would have been certified for class-wide resolution, that Plaintiffs' would have prevailed at trial, and that the jury's verdict would have been affirmed on appeal. Understandably, for purposes of evaluating the settlement's reasonableness, this estimate must be "tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014).

Ultimately, Plaintiffs' Counsel determined an appropriate range of recovery for settlement purposes by offsetting Defendant's maximum theoretical liability by: (i) the strength of the defenses to the merits of Plaintiffs' claims; (ii) the risk of class certification being denied, a risk that materialized in the Wilson Action; (iii) the risk of losing on any of a number of dispositive motions that could have been brought between certification and trial (e.g., motions to decertify the class, motions for summary judgment, and/or motions in limine) that might have eliminated all or some of Plaintiffs'

---

calculated as follows; 1,100 Class Members employed during the 1-year wage statute of limitations period × $4,000 maximum penalty = $4,400,000. However, because this claim is only as strong as the underlying predicate claims, Plaintiffs reduced the value of this claim by 50%, or to $2,200,000.

[9] Plaintiffs' off-the-clock claims trigger derivative waiting time penalties at the rate of 30 days' wages for each former class member. Based thereon, Plaintiffs estimate Defendant's exposure as follows: 950 former employees × 30 days wages × 8 hours × $19.88 = $4,532,640. However, while Section 203 penalties are relatively straightforward to calculate, the analysis becomes more difficult for settlement purposes as derivative waiting-time penalties are only as strong as the underlying predicate claims, and are subject to good faith defenses. For example, defendants commonly argue that no waiting-time penalties can be awarded unless the failure to pay wages is "willful," an element that Plaintiffs acknowledge would have been difficult to prove. *See* Cal. Code Regs. tit. 8, § 13520 ("[a] willful failure to pay wages within the meaning of Labor Code section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages were due."). Plaintiffs accordingly discounted the value of this claim by 50%, or to $2,266,320.

1  claims, or barred evidence/testimony in support of the claims; (iv) the risk of losing at

2  trial; (v) the chances of a favorable verdict being reversed on appeal; and (vi) the

3  difficulties attendant to collecting on a judgment.

4      Given the preceding risks of continued litigation, Plaintiffs believe that a

5  $500,000 settlement is fair and reasonable, and courts routinely approve settlements that

6  provide a similar discounted range of the maximum potential recovery.[10]

7      **4.    The Settlement Class Has Responded Positively to the**

8      **Settlement**

9      In evaluating the fairness of a Settlement, the "absence of a large number of

10  objections to a proposed class action settlement raises a strong presumption that the

11  terms of a proposed class settlement action are favorable to the class members." *National*

12  *Rural Tele. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004). Here, only 4

13  individuals opted out of the Settlement Class, and not a single Class Member objected to

14  the Settlement. (Romero Decl. ¶¶ 6-7.) The Class's response is "overwhelmingly

15  positive," supporting approval of the Settlement. *See 7-Eleven Owners for Fair*

16  *Franchising*, 85 Cal. App. 4th at 1152-53 (finding support for the settlement where 80

17  out of 5,454 class members elected to opt out and nine class members objected); *Chun-*

18  *Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding 0

19  objections and 16 opt-outs out of 329 class members [4.86%] "strongly support[]

20  settlement"); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC,

21  2010 WL 1687832, at *15 (N.D. Cal. Apr. 22, 2010) (finding an opt-out rate of 0.4%

22  supported settlement). In other words, "[t]he fact that the overwhelming majority of the

23  class willingly approved the offer and stayed in the class presents at least some objective

24  _____

[10] *See, e.g., In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 256-58 (D. Del.
25  2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total
estimated damages); *In re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1373 (N.D.
26  Ga. 1979) (settlements with a value of 1% to 8% of the estimated total damages were
approved); *In re LDK Solar Sec. Litig.*, No. 07-cv-05182-WHA, 2010 WL 3001384, at *2
27  (N.D. Cal. July 29, 2010) (granting final approving where "[t]he proposed settlement
amount is [. . .] only about five percent of the estimated damages before fee and costs—
28  even before any reduction thereof for attorney's fees and costs.").

1  positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027
2  (9th Cir. 1998).

3        The average settlement payment from the Net Settlement Fund is approximately
4  $100 and the highest is approximately $225. (Romero Decl. ¶ 8.) This average net
5  recovery is significantly higher than many wage and hour class action settlements
6  approved by California state and federal courts. *See, e.g., Badami v. Grassroots*
7  *Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) (average net
8  recovery of approximately $195); *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-
9  00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145);
10 *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net
11 recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No.
12 BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120);
13 *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super.
14 Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case
15 No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of
16 approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD
17 (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores,*
18 *Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of
19 approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A.
20 Super. Ct.) (average net recovery of approximately $20).

21       **C.**    **The Court Should Approve the PAGA Settlement**

22       Pursuant to the Settlement Agreement, $40,000 from the Gross Settlement
23 Amount shall be allocated to the resolution of the PAGA claim, of which 75% ($30,000)
24 will be paid directly to the LWDA, and the remaining 25% ($10,000) will be paid to
25 PAGA Members. (Settlement Agreement ¶ 36.)

26       This result was reached after good-faith negotiation between the parties. The
27 amount was valued as follows: Based on information and evidence produced by
28 Defendant during discovery, Plaintiffs' Counsel determined that aggrieved employees

worked a combined total of approximately 115,000 pay periods during the PAGA statute of limitations period ("PAGA Period"). Although PAGA provides for a $200 penalty for "subsequent" violations,[11] a number of courts have found that the "subsequent" penalty under PAGA applies only after a court or the Labor Commissioner determines that the employer has violated the Labor Code. *See Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157, 1173 (9th Cir. 2021) (reversing judgment as to "heightened civil penalties" because the defendant was not given notice by the Labor Commissioner when the "subsequent" violations occurred). Under this line of cases, Defendant's exposure would be approximately $11.5 million = 115,000 violative pay periods × $100.

It should be noted that PAGA gives the Court wide latitude to reduce the amount of civil penalties "based on the facts and circumstances of a particular case" when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h). In reducing PAGA penalties, courts have considered issues including whether the employees suffered actual injury from the violations, whether the defendant was aware of the violations, and the employer's willingness to fix the violation. *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528 (2018) (awarding PAGA penalties of only 0.2% of the maximum).

For example, during the penalty phase of trial in *Carrington*, the plaintiff requested PAGA penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000—**or 0.21% of the maximum**—and stated that this reduction was warranted because imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with meal period obligations and because the court found the violations were minimal. *Carrington*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed the lower court's

---

[11] , PAGA civil penalties for Labor Code violations are calculated according to Labor Code 2699(f)(2): If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation (the "subsequent violation penalty").

1  reduced award of a $150,000 penalty under PAGA. *Id.* at 529. If a similar reduction had

2  been applied here, Plaintiffs would have recovered only approximately $24,150 ($11.5

3  million × 0.0021 reduction).

4      Plaintiffs therefore determined an appropriate range of settlement for PAGA

5  penalties as a percentage of the settlement range that was consistent with other hybrid

6  class/PAGA settlements approved by California courts. [12] Where PAGA penalties are

7  negotiated in good faith and "there is no indication that [the] amount was the result of

8  self-interest at the expense of other Class Members," such amounts are generally

9  considered reasonable. *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL

10  928133, at *9 (N.D. Cal. Apr. 3, 2009); *see, e.g.*, *Nordstrom Com. Cases*, 186 Cal. App.

11  4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement

12  which does not allocate any damages to the PAGA claims.").

13      **D.    The Requested Payment to the Settlement Administrator Is**

14          **Reasonable and Should Receive Final Approval**

15      Plaintiffs request final approval of settlement administration costs in the amount

16  of $19,000. (Romero Decl. ¶ 10.) CPT has promptly and properly distributed the Class

17  Notice to all Class Members and completed its duties in accordance with the settlement

18  terms and the Court's preliminary approval Order. (*See generally* Romero Decl.)

19  Accordingly, the $19,000 payment is fair and reasonable and should be accorded final

20  approval along with the rest of the Settlement terms.

21  **IV.    CONCLUSION**

22      The Parties have negotiated a fair Settlement of the wage and hour claims that

23  likely would not have been brought, let alone successfully resolved, but for the effort and

---

24      [12] *See Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473

25  at *3 (E.D. Cal. June 29, 2016) (preliminarily approving $1.95 million settlement
containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Garcia v. Gordon

26  Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575 at *7 (E.D. Cal. Oct.
31, 2012) (approving $3.7 million settlement containing $10,000 PAGA penalties with

27  $7,500 paid to LWDA); *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP, 2011 WL
672645 at *1 (N.D. Cal Feb. 16, 2011) (approving $6.9 million settlement containing

28  $10,000 PAGA penalties with $7,500 paid to LWDA).

1    resolve of the Plaintiffs and their counsel. The Class Members' positive response

2    indicates that the Settlement is fair and reasonable. Accordingly, Plaintiffs respectfully

3    request that this Court grant final approval of the Settlement Agreement and enter

4    judgment.

5

6    Dated: October 7, 2022                    Respectfully submitted,

7                                        By: /s/ Brandon Brouillette
                                             Raul Perez
8                                            Mark A. Ozzello
                                             Brandon Brouillette
9                                            Joseph Hakakian
                                             **CAPSTONE LAW APC**
10                                           Attorneys for Plaintiff Mark Wilson

11

12                                       By: /s/ Christina M. Le
                                             Justin F. Marquez
13                                           Christina M. Le
                                             **WILSHIRE LAW FIRM, PLC**
14                                           Attorneys for Plaintiff Jack Rodriguez

15

16

17

18

19

20

21

22

23

24

25

26

27

28